Phyllis J. ROBINSON, Elaine M. Schares and Terrance P. McKenna, d/b/a Preferred Partners, Appellees,

v.

PERPETUAL SERVICES CORP., An Iowa Corporation, d/b/a Perpetual Partners Realty, Defendant,

v.

IOWA–NEBRASKA PARTNERS REAL ESTATE, INC., An Iowa Corporation, Appellant.

No. 84–1992.

Supreme Court of Iowa.

Sept. 23, 1987.

Rehearing Denied Oct. 22, 1987.

Peter C. Riley and Mary K. Hoefer, of Tom Riley Law Firm, P.C., Cedar Rapids, for appellant.

G. Brian Pingel, Katherine E. Schmidt, and Kimberly K. Mauer, of Davis, Hockenberg, Wine, Brown, Koehn & Shors, Des Moines, and David D. Dunakey, Waterloo, for appellees.

Considered by REYNOLDSON, C.J., and HARRIS, LARSON, LAVORATO and NEUMAN, JJ.

REYNOLDSON, Chief Justice.

Plaintiff real estate agents brought this action against defendant franchisor Iowa-Nebraska Partners Real Estate, Inc. (Iowa-

Nebraska) for damages arising out of the latter's sale to them of a "Partners" real estate franchise. The jury awarded plaintiffs $40,579 in damages and trial court entered judgment against Iowa-Nebraska in that amount. Defendant appealed and the court of appeals reversed. We granted further review and now vacate the court of appeals decision and affirm the trial court.

The record before us contains evidence from which the jury could have found the following facts.

April 26, 1982, plaintiffs Phyllis J. Robinson and Elaine M. Schares purchased a Waterloo real estate firm they then operated under the trade name "Globe-Rainbow Realty." Before and after this purchase, Robinson and Schares, with other individuals, were visited by James Leonard, an Iowa-Nebraska agent. Iowa-Nebraska is a real estate sales franchisor that sells real estate franchises in the Iowa-Nebraska area by agreement with Partners Real Estate, Inc. (Partners).

The meetings with Leonard explored the possibility of entering into a "Partners" franchise agreement with Iowa-Nebraska. Plaintiffs Robinson and Schares wanted to obtain exclusive franchise rights for the Waterloo-Cedar Falls area. Leonard repeatedly told them such agreements were illegal and would be rejected by Iowa-Nebraska.[1] Leonard assured them, however, that an exclusive franchise was unnecessary because once they signed an agreement Iowa-Nebraska would solicit no further potential franchises in the Waterloo-Cedar Falls area.

Relying on Leonard's assurances, Robinson and Schares signed a franchise agreement with Iowa-Nebraska on May 20, 1982, and began operating under the name of "Globe-Rainbow Partners."

In August 1982 Robinson and Schares learned that Leonard had been seen in several savings and loan offices in the Waterloo area. Schares telephoned Richard Lange, president of Iowa-Nebraska, to find out why. Lange assured Schares his company's policy of no further solicitation was unchanged and that Leonard was in town only to do follow-up calls and close off negotiations with parties contacted by him before plaintiffs obtained their Partners franchise.

Throughout this period, Robinson and Schares had considered adding a third partner. By September 1982 they were seriously negotiating with the third plaintiff in this action, Terrance P. McKenna, who had operated a real estate office as "Preferred Realty." The latter agreed to join the firm if it changed its name to "Preferred Partners." At a "Partners" rally in September 1982, McKenna was introduced to Iowa-Nebraska's agents, who were told he was going to be joining Robinson and Schares as a partner and the firm name would be changed to "Preferred Partners." Plaintiffs were assured this would be no problem. October 22, 1982, plaintiffs recorded the trade name "Preferred Partners."

Meanwhile, negotiations had continued between Leonard and Perpetual Savings and Loan Association of Waterloo. About a week after the "Preferred Partners" trade name was filed, a franchise agreement was consummated under which the association, through a subsidiary, Perpetual Services Corp., started doing business as "Perpetual Partners Realty" or "Perpetual Partners."

Perpetual Partners began competing against Preferred Partners in the real estate market in January 1983. At trial plaintiffs produced proof indicating a drop in business volume and resulting damages in the sum of $20,000 in 1983 and $20,579 in 1984, totaling the $40,579 ultimately awarded by the jury. Significant public confusion was caused by the similarity between the names "Preferred Partners" and "Perpetual Partners."

Plaintiffs filed action against Iowa-Nebraska and Perpetual Services Corp. d/b/a Perpetual Partners Realty. The jury awarded separate damages against Perpet-

---

**1.** Trial evidence disclosed Iowa-Nebraska had itself obtained an exclusive franchise from Partners. Several witnesses closely associated with Iowa-Nebraska testified that exclusive franchises for a particular geographic area could be granted under appropriate circumstances.

ual Services Corp. That controversy is settled and Perpetual Services Corp. is not a party to this appeal. Plaintiffs' claims against Iowa-Nebraska were in law for fraudulent misrepresentation and negligent misrepresentation, and in equity for rescission.

Plaintiffs' fraud claim is premised on Leonard's assurances Iowa-Nebraska would seek no additional franchises in the Waterloo-Cedar Falls area. In addition to this statement, plaintiffs' negligent misrepresentation claim relies on Leonard's statement that it was illegal to grant exclusive franchises. Plaintiffs' claim for equitable relief is grounded upon their assertion Leonard's statement concerning Iowa-Nebraska's policy of soliciting no further franchises fraudulently induced them to accept Iowa-Nebraska's franchise agreement.

Plaintiffs' fraudulent misrepresentation and negligent misrepresentation claims were tried to the jury. Their rescission claim was tried simultaneously in equity to the court.

The jury found Iowa-Nebraska liable on both counts tried to it and, as we have noted, awarded plaintiffs $40,579 in damages. Iowa-Nebraska appealed, but then successfully moved for a limited remand to trial court for a ruling on the unresolved equitable issue of rescission.

On remand, trial court held the franchise contract between the parties was rescinded. It also held no additional damages should be awarded because the size of the jury verdict convinced trial court full restitution had been made to plaintiffs for all costs incurred by them under the contract.

On appeal, Iowa-Nebraska contends trial court erred: (1) by submitting the fraud claim to the jury, (2) by submitting the negligent misrepresentation claim to the jury, and (3) by rescinding the franchise agreement. By cross-appeal, plaintiffs argue trial court was correct in rescinding the franchise agreement, but erred in not awarding additional restitution damages.

I. Iowa-Nebraska contends trial court erred in submitting plaintiffs' fraud count to the jury because plaintiffs produced insufficient evidence to support several elements of fraud.

To establish that Leonard's statement concerning the solicitation of additional franchises was fraudulent, plaintiffs were required to prove the following elements: (1) representation, (2) falsity, (3) materiality, (4) scienter, (5) intent to deceive, (6) reliance, and (7) resulting injury and damage. *Cornell v. Wunschel,* 408 N.W.2d 369, 374 (Iowa 1987); *B & B Asphalt Co. v. T.S. McShane Co.,* 242 N.W.2d 279, 284 (Iowa 1976). Each of these seven elements must be established by a preponderance of the clear, satisfactory, and convincing evidence. *Cornell,* 408 N.W.2d at 374.

Iowa-Nebraska argues that although Leonard asserted he would not solicit other franchises in the Waterloo-Cedar Falls area, this was a statement of future intent and nothing in the record supports a finding the statement was false when made. Rather, only because of a later change in circumstances, the purchase of Iowa-Nebraska by Midland Finance in July of 1982, did Iowa-Nebraska change its policy and solicit an additional franchise in the Waterloo-Cedar Falls area.

Under Iowa law, a statement of intent to perform a future act is actionable if when made the speaker had an existing intention not to perform. *Hagarty v. Dysart-Geneseo Community School Dist.,* 282 N.W.2d 92, 95 (Iowa 1979); *Grefe v. Ross,* 231 N.W.2d 863, 867 (Iowa 1975). However, in establishing the present intent not to perform, "[t]he fact the agreement was not performed does not alone prove the promissor did not intend keeping it when it was made." *Lamasters v. Springer,* 251 Iowa 69, 74, 99 N.W.2d 300, 303 (1959); *see also Hagarty,* 282 N.W.2d at 95.

As Prosser has stated in his treatise on the law of torts:

Unless the present state of mind is misstated, there is of course no misrepresentation. When a promise is made in good faith, with the expectation of carrying it out, the fact that it subsequently is broken gives rise to no cause of action,

either for deceit, or equitable relief. Otherwise any breach of contract would call for such a remedy. The mere breach of a promise is never enough in itself to establish the fraudulent intent. It may, however, be inferred from the circumstances, such as the defendant's insolvency or other reason to know that he cannot pay, or *his repudiation of the promise soon after it is made, with no intervening change in the situation,* or his failure even to attempt any performance, or his continued assurances after it is clear that he will not do so.

W. Prosser, *The Law of Torts* § 109, at 730–31 (4th ed. 1971) (footnotes omitted) (emphasis added).

Two prior cases of this court illustrate these principles. In *Hagarty v. Dysart-Geneseo Community School District,* plaintiff music teacher's employment was terminated after she was told her position was being eliminated for budgetary reasons. *Hagarty,* 282 N.W.2d at 94. Subsequently, circumstances changed and the music position was reinstated and offered to another person. We rejected plaintiff's fraud claim, concluding "the fact that the vocal music position was reinstated ... is not alone sufficient to show that the earlier representation was false." *Id.* at 95.

In contrast with *Hagarty* is *Grefe v. Ross,* 231 N.W.2d 863 (Iowa 1975). There, plaintiff was induced to invest in a housing franchise by a company promising a wide variety of services, including financing. *Id.* at 865. Defendant failed to perform. Plaintiff eventually recovered because the circumstances and incidents accompanying defendants' failure demonstrated that when made the company had no capacity or intention to keep its promises. *Id.* at 867.

◼ Iowa-Nebraska asserts this is a *Hagarty* case; that only after Iowa-Nebraska was purchased by Midland Finance was the policy changed to actively solicit savings and loan associations as potential franchisees.

Plaintiffs respond that evidence beyond the failure to perform supports the jury's finding of falsity. It is apparent the jury might have considered the short lapse of time between Leonard's representation and its breach. The alleged misrepresentation was accompanied by Leonard's simultaneous assertions that an exclusive franchise was declared illegal by the "Fair Trade Commission," while at the same time he was telling a prospect in another city it was the "attorney general" who had held such contracts illegal.

Coupled with this, the jury might have considered Robinson's testimony that she called the Iowa-Nebraska offices when she learned Midland Finance had purchased that company and was assured "the only changes that would come would be for the better," and that financing would be made available to this franchisee. Later when Schares called president Lange of Iowa-Nebraska inquiring why Leonard was back in the city he assured her he was not soliciting further franchises. All of this evidence, taken together, must have convinced the jury that Iowa-Nebraska, through its agent Leonard, was in bad faith at the time he represented he would solicit no other potential franchisees in the Waterloo-Cedar Falls area. Although we might as fact finder have reached a different result, we find requisite quantum and quality of evidence to support the jury verdict in this regard.

Iowa-Nebraska next asserts plaintiffs failed to prove they justifiably relied on Leonard's representation of no further solicitation.

Plaintiffs initially requested an exclusivity provision actually be placed in the franchise agreement. Iowa-Nebraska refused, asserting such provisions were illegal. The evidence reflects, however, that Leonard repeatedly assured plaintiffs that while Iowa-Nebraska could not legally ensure exclusivity, it nevertheless would solicit no other franchises in the area once plaintiffs' agreement was in place. These assurances were presented as established company policy and unquestionably were intended to induce plaintiffs to enter into an agreement with Iowa-Nebraska. Plaintiffs testified that without such assurances no agreement would have been reached.

In response, Iowa-Nebraska asserts any reliance by plaintiffs was unreasonable. Iowa-Nebraska focuses primarily on two facts. First, this transaction was arm's length in nature and occurred between two experienced and knowledgeable parties. Second, the contract signed by plaintiffs expressly stated:

This Agreement and any addendums or exhibits hereto, constitute the entire, full and complete Agreement between the parties concerning the subject matter hereof and supersede all prior agreements, no other representations having induced Partner to execute this agreement and *there are no representations, inducements, promises or agreements, oral or otherwise, between the parties not embodied herein, which are of any force or effect with reference to this Agreement or otherwise.* No amendment, change or variance from this Agreement shall be binding on either party unless executed in writing.

(Emphasis added.)

■ The jury may well have considered this fine-print, boiler-plate franchise provision was not intended to encompass the assurances Leonard was making to the plaintiffs to persuade them to sign the instrument. Nor are such provisions legally enforceable when there has been fraud that has induced the making of the contract. *Hall v. Crow*, 240 Iowa 81, 88, 34 N.W.2d 195, 199 (1948) ("[W]here there is evidence of fraudulent misrepresentations in the inception of a contract such misrepresentations can be the basis for ... an action ... for damages, despite the limiting provisions of a contract."); *see International Milling Co. v. Gisch*, 258 Iowa 63, 71, 137 N.W.2d 625, 630 (1965).

■ Turning to Iowa-Nebraska's argument that the contracting parties comprised competent business persons operating at arm's length, there is no indication plaintiffs were experts or even very knowledgeable in the area of franchises, which clearly cannot be said of Leonard or Iowa-Nebraska. In view of Leonard's claim that exclusive franchises were illegal, there was

little reason for plaintiffs to doubt his declarations about the company's non-solicitation policy, or for them not to rely on it. We cannot conclude as a matter of law that no reasonable jury could find plaintiffs' reliance to be justified.

As a final attack on plaintiffs' fraud judgment, Iowa-Nebraska asserts it is unsupported by sufficient evidence. Although Iowa-Nebraska concedes plaintiffs' evidence demonstrated their Preferred Partners operation lost money after Perpetual Partners opened its office, Iowa-Nebraska claims plaintiffs did not show these losses were proximately caused by the actions of this defendant.

■ Generally, a successful plaintiff in a fraud case is entitled only to the benefit of its bargain, unless additional out-of-pocket damages are necessary to make the plaintiff whole. *Cornell v. Wunschel*, 408 N.W.2d 369, 380 (Iowa 1987); *B & B Asphalt Co. v. T.S. McShane Co.*, 242 N.W.2d 279, 285 (Iowa 1976); *see also Freeman v. Bonnes Trucking, Inc.*, 337 N.W.2d 871, 879 (Iowa 1983).[2] And, while recovery will be denied if it is speculative and uncertain whether damage has been sustained, *Larsen v. United Fed. Sav. & Loan Ass'n*, 300 N.W.2d 281, 288 (1981), recovery will not be denied merely because the amount of damages is difficult to ascertain, *Palmer v. Albert*, 310 N.W.2d 169, 174 (Iowa 1981). So long as there is a reasonable basis in the record from which the amount of damages can be inferred or approximated, recovery will be allowed. *Larsen*, 300 N.W.2d at 288.

■ Here, we hold there is adequate record support for finding plaintiffs were damaged. The record, while far from conclusive, also provides a reasonable basis for determining the amount of those damages.

■ Turning to the question of proximate cause, we apply the two-part test: "(1) But for defendant's fault, plaintiff's injuries would not have occurred; and (2) Defendant's fault must be a substantial factor in bringing about plaintiff's harm."

**2.** Iowa-Nebraska did not challenge trial court's instructions on the measure of damages.

*Johnson v. Junkmann,* 395 N.W.2d 862, 865 (Iowa 1986). The question of proximate cause is a question of fact and may be taken from the jury only in exceptional cases. Iowa R.App.P. 14(f)(10). Iowa-Nebraska's actions were sufficiently related to plaintiffs' harm to allow a reasonable jury to regard them as a cause "using that word in the popular sense, in which there always lurks the idea of responsibility." *Id.* at 865 (quoting *Pedersen v. Kuhr,* 201 N.W.2d 711, 713 (Iowa 1972)).

We find Iowa-Nebraska's challenge to plaintiffs' damage award is without merit.

II. Iowa-Nebraska next contends trial court should not have submitted plaintiffs' negligent misrepresentation claim to the jury. We find it unnecessary to address this proposition relied on for reversal.

■ Under trial court's instructions and verdict forms, the jury specially found that Leonard knowingly made a fraudulent misrepresentation to plaintiffs that induced them to sign the franchise agreement, and that plaintiffs justifiably relied on that misrepresentation. The jury also specially found Leonard made a negligent misrepresentation to plaintiffs, and that plaintiffs relied thereon. When asked to fix plaintiffs' damages "for fraudulent or negligent representation or both," the jury returned a verdict for $40,579. Iowa-Nebraska made no objections to these relevant instructions or the verdict forms. In view of the finding of fraud and the verdict incorporating that tort, we hold Iowa-Nebraska has no basis for asserting it was harmed when the court submitted the negligent misrepresentation theory to the jury.

■ III. There remains plaintiffs' claim for rescission. As a general rule, fraudulent misrepresentations leading to the creation of a contract give rise to a right of rescission. *Midwest Management Corp. v. Stephens,* 291 N.W.2d 896, 906 (Iowa 1980); *Maytag Co. v. Alward,* 253 Iowa 455, 464–66, 112 N.W.2d 654, 659–60 (1962). Parties seeking rescission are entitled to restitution for expenses incurred under the contract, but as a result of the election to rescind ordinarily cannot also recover contract damages. *Maytag,* 253

Iowa at 464–66, 112 N.W.2d at 659–60; *Miller-Piehl Equip. Co. v. Gibson Comm'n Co.,* 244 Iowa 103, 110, 56 N.W.2d 25, 29 (1952).

Here, Iowa-Nebraska simply argues there was no basis for trial court to grant a rescission of the contract because there was no basis for a finding of fraudulent representation. We answered this contention in division I, where we determined there was sufficient evidence to support the jury's finding of fraudulent misrepresentation.

■ Plaintiffs argue trial court not only was right in ordering rescission of the contract, the court also should have awarded them restitution, that is, the franchise fees plaintiffs paid Iowa-Nebraska. After examining the evidence before us we agree with trial court that the jury's verdict for plaintiffs, based upon their losses in the two-year period, included the franchise fees paid.

We vacate the decision of the court of appeals and affirm the judgments entered by district court.

DECISION OF COURT OF APPEALS VACATED; JUDGMENTS OF DISTRICT COURT AFFIRMED.