940 F.2d 1176
 COENCO, INC., an Arkansas Business Corporation, and Frank
Siccardi, Appellants,
v.
COENCO SALES, INC., an Alabama Corporation; Coordinated
Environmental Systems Corporation, an Alabama Corporation;
Tim Rogers, Individually; Herbert Hannah, Individually;
All Jointly and Severally, Appellees.
 No. 90-2795.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 12, 1991.
Decided Aug. 5, 1991.
 
 Mark Lindsay, Fayetteville, Ark., for appellants.
 John Eldridge, Fayetteville, Ark., for appellees.
 Before McMILLIAN, Circuit Judge, and FLOYD R. GIBSON and HENLEY, Senior Circuit Judges.
 FLOYD R. GIBSON, Senior Circuit Judge.
 
 
 1
 The appellant, Coenco, won a jury verdict on a theory of fraud and deceit against Coenco Sales, the appellee. This is an appeal of the district court's[1] grant of judgment notwithstanding the verdict for failure of the evidence to support the verdict. We agree with the district court and affirm its judgment.
 
 I. BACKGROUND
 A. Factual--A Better Chicken Coop[2]
 
 2
 Frank Siccardi has spent his professional life working in the poultry business, and over the years he has developed a machine, the Enviro-Opti-Mizer, to control the environment in poultry houses. He has patented various components of his invention and incorporated Coenco in 1983 under the laws of Arkansas for the purpose of promoting his invention. Thereafter, he sought the services of Tim Rogers whose acquaintance he had made when Rogers worked as a salesman for Hannah Supply, an agricultural products dealer in Alabama. Siccardi believed that if he could surround his company with some knowledgeable sales people Coenco would prosper. Rogers expressed similar hopes to Siccardi.
 
 
 3
 Rogers was to head up a sales arm of Coenco called, simply enough, Coenco Sales, which was incorporated under the laws of Alabama. In late September 1986, Rogers (on behalf of Coenco Sales) and Siccardi (on behalf of Coenco) signed a document entitled "Sales Agreement" by which Coenco Sales was to become the chief and worldwide distributor of the Coenco Enviro-Opti-Mizer. Because Rogers had signed a no-compete agreement with Herbert Hannah (owner of Hannah Supply) as part of his employment contract with Hannah Supply, Rogers included Hannah in the operation of Coenco Sales to avoid violation of the no-compete agreement. Though Siccardi knew that Hannah would have an interest in Coenco Sales, Siccardi believed that Rogers would be the company's controlling owner. Siccardi believed that Hannah had a poor business reputation, and Siccardi did not want to jeopardize sales of the Enviro-Opti-Mizer by associating Coenco too closely with Hannah. As it turned out, Hannah, at least initially, owned the controlling interest in Coenco Sales. Nevertheless, Siccardi continued to work with Coenco Sales after discovering this fact because Siccardi still hoped to make the parties' business relationship succeed.
 
 
 4
 Needless to say, things went sour quickly. The evidence reflects that Rogers did not do much of a job as the promoter of the Enviro-Opti-Mizer with Coenco Sales. The best year of sales of Enviro-Opti-Mizers was in 1986, and most of the efforts that year can probably be attributed to Siccardi, as Coenco Sales did not come into being until the fall of that year. 1987 appears to have been a low point, with only a little turnaround in 1988. Testimony from persons in various facets of the poultry industry supports the conclusion that Coenco Sales was run rather poorly. The company certainly did not live up to the hopes of Siccardi.
 
 
 5
 Rogers and Hannah began competing with Coenco for the Enviro-Opti-Mizer market by developing their own version of the machine sometime in 1989 and by creating an Alabama corporation to sell it. Rogers and Hannah used some of the same producers and suppliers used by Coenco to produce their machine. Siccardi, as he testified, had had enough by this point; he ceased providing supplies to Coenco Sales and sued the company.
 
 
 6
 B. Procedural--A Novel Theory of Fraud (by Contract Breach)
 
 
 7
 The original complaint was filed in August 1989 against only Coenco Sales. The complaint pleaded breach of contract and acts of deceit and noticed cancellation of the agreement between Coenco and Coenco Sales. Coenco Sales counterclaimed and sought an injunction, neither of which action is any longer part of this case. Coenco filed the amended complaint currently under review in April 1990. This complaint added Rogers, Hannah, and the Alabama Corporation they formed to sell Enviro-Opti-Mizer-like machines. The action again sounded in contract, but used the word "deceit" and its derivatives to describe some of the defendants' breaches. This complaint also included a claim for violations of the Arkansas Trade Secrets Act.
 
 
 8
 Against its better judgment, and despite the contractual nature of the complaint, the district court allowed Coenco to proceed to trial on a theory of fraud. The trial proceeded with some difficulty as the defendants and the district court struggled to understand the theory of recovery Coenco advanced. At trial, Coenco repeatedly disavowed the existence of a contract or any breach of contract action and relied exclusively on its fraud and deceit theory, though its evidence often plainly supported, at best, only contract breaches. The district court, in turn, repeatedly indulged Coenco and allowed testimony that had little, if anything, to do with the purported fraud by the defendants. The evidence on trade secrets was also weak, as the allegedly protected secrets where readily available to the public.
 
 
 9
 After receiving a motion for directed verdict from the defendants at the close of Coenco's case, the district court suggested that a directed verdict might be appropriate as to both the fraud and trade secrets counts, but that it would not grant the motion in light of its view that this court does not take kindly to directed verdicts. The motion was renewed at the close of the defendants' case and then by motion for judgment n.o.v. after the jury's verdict. This last motion was granted, as the district court had forewarned, as to fraud and trade secrets; a motion for new trial was conditionally granted pursuant to Fed.R.Civ.P. 50(c). The district court's memorandum opinion also concluded that Coenco had failed to bring forth evidence from which a reasonable jury could assess damages. Coenco appeals arguing that the district court improvidently granted the defendants' motion for j.n.o.v. or, in the alternative, a new trial and erroneously concluded no damages had been shown by the evidence.
 
 II. DISCUSSION
 A. Fraud and Deceit
 
 10
 For whatever reason, Coenco fervently pursued an apparent contract claim as one for fraud, despite that its pleading had only the most tenuous connection to that doctrine. The district court, notably frustrated and hesitant because Coenco elected to recast a contract case as one for fraud, let the case proceed, though the court plainly believed that a directed verdict was warranted because the evidence made out only a contract case. See Trial Transcript at 439-44. While we might agree, we note that the erstwhile contract case was purposely forsaken by Coenco in the hopes of something better by way of fraud.
 
 
 11
 Therefore, Coenco must be held to the higher evidentiary burdens attendant that theory of recovery. A fraud case cannot be won by a showing of broken promises and unrealized business potential. Coenco had to show not only that the defendants did not keep their promises, but also that they did not intend to keep them when they made them (or that they knew they could not keep them). See, e.g., Barnett v. Arkansas Transport Co., 303 Ark. 491, 492-93, 800 S.W.2d 429, 430 (1990) (supplemental opinion) (listing the elements of deceit). This Coenco did not do. Without detailing the evidence, we note that the trial testimony revealed, at best, unkept commitments that were insufficient to support the jury's verdict on fraud or deceit. Having examined the record, we conclude that defendants' motion for j.n.o.v. was correctly granted.
 
 B. Trade Secrets
 
 12
 Arkansas has adopted the uniform law on trade secrets and defines a trade secret as:
 
 
 13
 information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
 
 
 14
 (A) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
 
 
 15
 (B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.
 
 
 16
 Ark.Code Ann. Sec. 4-75-601(4) (1987).
 
 
 17
 We agree with the district court that one need look no further than the statute itself to appreciate that no trade secret is involved in this case. The testimony on this count was somewhat confused as Coenco never quite specified what "trade secrets" had been taken from it. The theory seems to have been that the defendants had stolen Siccardi's ideas as represented by the Enviro-Opti-Mizer.
 
 
 18
 Even taken in the light most favorable to the verdict, the testimony at trial revealed that the Enviro-Opti-Mizer or its components, together or singly, are either generally known by virtue of extant patents[3] or readily ascertainable by proper means (such as reverse engineering or simple observation), contrary to the requirement of subparagraph (A). See Hi-Line Elec. Co. v. Moore, 775 F.2d 996, 997 (8th Cir.1985) (customer information). Further, while we have no doubt that the defendants learned a good deal about how to make a better chicken coop from Siccardi and his invention, Coenco failed to demonstrate that it took reasonable, if any, efforts to maintain any secrecy on the subject matter as required by subparagraph (B). To the contrary, Coenco's literature describes the Enviro-Opti-Mizer and its operation in some detail. We conclude that the evidence failed, as a matter of law, to prompt application of the Arkansas Trade Secrets Act and, thus, j.n.o.v. on this count was correctly entered.
 
 III. CONCLUSION
 
 19
 After reviewing the evidence and drawing all reasonable inferences in favor of the jury's verdict, we conclude that the district court's judgment notwithstanding the verdict was properly entered. Given our affirmance of j.n.o.v., we do not reach the district court's holding on damages or the conditional grant of the motion for a new trial.
 
 
 
 [1]
 The Honorable H. Franklin Waters, Chief Judge for the United States District Court for the Western District of Arkansas
 
 
 [2]
 Because of the j.n.o.v. standard, our recitation of the facts takes the evidence in the light most favorable to support the verdict of the jury. See Rellergert ex rel. Rellergert v. Cape Girardeau County, Mo., 924 F.2d 794, 797 (8th Cir.1991) and cases cited therein
 
 
 [3]
 We note, as did the district court, that it is axiomatic that a thing patented cannot also remain a secret