Alan L. BROWN, David Burmester, Don Butson, Steve Hackbarth, Ken Mutschler, Marlyn Tripp, Kurt Wolf, and Maurice Wolf, Plaintiffs/Counterclaim Defendants,

v.

NORTH CENTRAL F.S., INC., Defendant/Counterclaim Plaintiff.

CEBAR FARMS, INC., Barbara Lyon, Jerry Lyon, and James Dean Krabbe, Plaintiffs/Counterclaim Defendants,

v.

NORTH CENTRAL, F.S., INC., Defendant/Counterclaim, Plaintiff.

Nos. C 96–3074–MWB, C 96–3080–MWB.

United States District Court, N.D. Iowa, Central Division.

Dec. 26, 1997.

Glenn Norris of Hawkins & Norris, Des Moines, IA, for Plaintiffs.

Steven H. Hoeft (argued) of McDermott, Will & Emery, Chicago, IL, Edward M. Mansfield (local counsel) of Belin, Harris, Lamson, McCormick, P.C., Des Moines, IA, for Defendant.

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION TO DISMISS COUNTS II–V OF THE SECOND AMENDED AND SUBSTITUTED COMPLAINT**

BENNETT, District Judge.

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................... 1152
   A.   The Cases .............................................. 1152
   B.   The Ruling In Brown II ................................ 1153
   C.   The Second Amended And Substituted Complaints ........ 1154

II.  LEGAL ANALYSIS ............................................ 1155
   A.   Requirements For Pleading Fraud ....................... 1155
        1.   Pleading falsity and knowledge thereof ........... 1155
        2.   Broken promises .................................. 1156
        3.   The Producer's pleading of falsity and knowledge thereof ............. 1158
   B.   Dismissal With Prejudice .............................. 1159

III. CONCLUSION ................................................ 1160

Have the plaintiffs merely poured the same old wine—or what the defendant might characterize as the same old "whine"—into a new, larger bottle, or is this vintage unquestionably better than the last? The defendant grain elevator contends that, on their third

attempt, the plaintiff grain producers have still failed to plead fraud pursuant to the Commodity Exchange Act (CEA), 7 U.S.C. §§ 1–25, and Iowa common law with the "particularity" required by Fed.R.Civ.P. 9(b), because they have failed to correct deficiencies previously found by the court. To paraphrase the elevator's argument, the repleaded fraud claims are just the same "bad wine" the grain producers have already served to the elevator and the court—there is just more of it. The grain producers, however, assert that they have now pleaded fraud in accordance with the applicable rule, this court's prior decisions, and precedent of the Eighth Circuit Court of Appeals. Thus, they might contend, they have served not just more wine, but better. Whether the "wine" is any better or not, there is certainly now a remarkable volume of it, as the repleaded complaints in these two cases run to unprecedented lengths. The court's unenviable task at this "private tasting" is to decide whether the plaintiffs' fraud claims should be "laid down" to mature for trial, or simply disposed of.

## I. INTRODUCTION
### A. The Cases

These two cases both involve claims concerning so-called "hedge-to-arrive" contracts (HTAs) for the sale and purchase of grain brought by several grain producers (the Producers) against a single grain elevator (the Elevator). Each of the Producers entered into one or more such HTAs with the Elevator during 1994, 1995, or early 1996. As this court observed in its rulings on the Elevator's previous challenges to the adequacy of the Producers' pleading of fraud claims, these two cases have not been formally consolidated in any way. *See North Central F.S., Inc. v. Brown,* 951 F.Supp. 1383, 1386 (N.D.Iowa 1996) (*Brown I* ); *Brown v. North*

Central *F.S., Inc.,* 173 F.R.D. 658, 661 (N.D.Iowa 1997) (*Brown II* ).[1] Rather, the court and the parties, represented by the same counsel in each case, have recognized the near identity of issues presented. Therefore, for the sake of convenience, the court once again conducted a joint hearing on the motions to dismiss in each case on December 22, 1997,[2] and now files a single opinion. Also, as in *Brown II,* the first of these actions, Case No. C96–3074–MWB, filed on August 20, 1996, will be referred to as the Brown Case, while the second, Case No. C96–3080–MWB, filed on September 10, 1996, will be referred to as the CeBar Farms Case.[3]

Although the nature of the parties' claims has been discussed in each of the prior rulings, for the sake of providing the necessary context to the present ruling, it is worth repeating a brief description of the Producers' claims. In each case, the Producers' Count I is an action for declaratory judgment, seeking a declaration that the HTAs are illegal futures contracts in violation of the CEA; Count II is a claim for fraud in violation of section 4b of the CEA, 7 U.S.C. § 6b, and seeks rescission as the principal remedy; Count III is again a claim of fraud in violation of section 4b of the CEA, 7 U.S.C. § 6b, but this count seeks damages as the principal relief; Count IV is a common-law claim of fraudulent misrepresentation seeking rescission or cancellation of the contracts as relief; Count V is another common-law claim for fraudulent misrepresentation, but this count seeks damages, both actual and punitive, as relief; Count VI asserts negligent misrepresentation against the Elevator, and seeks as relief actual and punitive damages; and Count VII is a cause of action for breach of contract.

---

1. In *Brown I,* the court directed that, in order to obtain jurisdiction over the Elevator's claims as compulsory counterclaims in Case No. C96–3074–MWB, the parties in that case should be realigned. *Brown I,* 951 F.Supp. at 1411–12.

2. At the oral arguments, the Producers were represented by counsel Glenn Norris of Hawkins & Norris, in Des Moines, Iowa. The Elevator was represented by counsel Steven H. Hoeft, who argued the case, of McDermott, Will & Emery in

Chicago, Illinois, and local counsel Edward M. Mansfield of Belin, Harris, Lamson, McCormick, P.C ., in Des Moines, Iowa.

3. The parties filed virtually identical motions, resistances, and briefs in each case. Therefore, the court will refer to only one of these filings, when necessary, describing it as "joint," rather than citing identical portions of separate filings in each case.

The Elevator has moved to dismiss Counts II through V in each of the Producers' second amended and substituted complaints on the ground that each of these counts fails, for the third time, to plead fraud with the particularity required by FED.R.CIV.P. 9(b). Additionally, the Elevator contends that the Producers have failed to allege that the Elevator acted "for or on behalf of" the Producers, as required for a claim pursuant to 4b of the CEA; failed to allege that any action of the Elevator caused them to sustain losses; failed to allege "loss causation"; and failed to allege other requirements of a common-law fraud claim. The Producers have concentrated their response on the adequacy of their pleading of fraud pursuant to Rule 9(b).

## B. The Ruling in Brown II

The yardstick against which the second amended and substituted complaints must be judged is, at least in the first instance, this court's ruling in *Brown II*, because that ruling detailed the failings of the *first* amended and substituted complaint in each case. In *Brown II*, the court considered the adequacy of the pleading of fraud as to each alleged misrepresentation in light of five considerations: (1) the pleading of the identity of speaker and recipient; (2) the pleading of time, place, and manner of the alleged fraud; (3) the pleading of the content of the alleged misrepresentation; (4) the pleading of falsity and knowledge thereof; and (5) the fraud pleadings taken as a whole. *See Brown II*, 173 F.R.D. at 666–72.

In *Brown II*, the court found that, with specified exceptions, the amended pleadings cured the deficiencies of pleading fraud under Rule 9(b) found in the original complaints with respect to identification of speakers and recipients of alleged misrepresentations. *Id.* at 667. As to time, place, and manner, the court found that pleading what a plaintiff "understood" is insufficient, because fraud will lie only for what a defendant affirmatively misrepresented or failed to disclose while under a duty to make such a disclosure. *Id.* at 669. Such pleadings, the court held, are tantamount to " 'conclusory allegations that a defendant's conduct was fraudulent and deceptive' which 'are not sufficient to satisfy the rule.' " *Id.* (quoting *Commercial Property Inv., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir.1995)). Thus, repleaded

fraud claims based on "understandings" still failed to meet the particularity requirements of Rule 9(b). *Id.* The pleading of the content of misrepresentations was also held to be inadequate, to the extent any allegation of fraud was based merely on what a plaintiff "understood." *Id.*

However, as in *Brown I*, which dismissed the original complaints, the most critical flaw the court found in *Brown II* in the first amended and substituted complaints was in the pleading of falsity and knowledge thereof. Upon plaintiffs' second try to plead fraud, the court found that facts upon which inferences of falsity and knowledge of falsity could be based were still not pleaded in the amended complaints. *Brown II*, 173 F.R.D. at 671. Furthermore, the arguments in the Producers' brief, offered instead of actual pleadings, were not based on facts contemporaneous with the alleged misrepresentations, such that no inference arose as to either falsity or knowledge of falsity at the time the representations were made. *Id.* Therefore, the *first* amended complaints still failed to allege with particularity either the falsity of the alleged misrepresentations or the defendants' knowledge or notice of such falsity. *Compare Brown II*, 173 F.R.D. at 671, *with Brown I*, 951 F.Supp. at 1408–09 ("Perhaps most fatal to the pleadings here ... is that why the statements were allegedly fraudulent is left entirely to inferences based on suggestions of the content of those statements.... [N]owhere do [the Producers] allege specific facts that make it reasonable to believe that defendants knew that the statements were materially false or misleading.").

Although the court found the repleading of fraud was still inadequate, and the court expressed its reluctance to grant the Producers a *further* opportunity to amend claims already once dismissed as inadequate and still deficient upon repleading, *Brown II*, 173 F.R.D. at 671–72, the court did not simply dismiss the fraud claims. *See id.* at 674–75. Instead, because other viable claims had been asserted, and because this matter was still at the preliminary stages—at least procedurally—the court concluded that there would be little real prejudice to the Elevator if the Producers were "granted one *final*

opportunity to attempt to plead fraud with particularity." *Id.* at 675. The Producers have now presented the Elevator and the court with that *"final* attempt." .

### C. The Second Amended And Substituted Complaints

On August 26, 1997, the Producers filed a second amended and substituted complaint in each case. On September 30, 1997, the Elevator moved to dismiss portions of each complaint yet again. The Elevator's renewed challenge to the pleadings in these cases concentrates only on the fraud claims. Therefore, the fraud claims have also been the court's focus in examining differences between the first and second amended and substituted complaints in each case. Although the second amended and substituted complaint in each case is considerably more voluminous than its predecessor,[4] the key question is really whether more is actually better.

The Producers have also asserted that the essence of their pleadings of fraud is the same for each plaintiff or group of plaintiffs in each case, as each plaintiff bases his or her fraud claims on the same five alleged misrepresentations. Therefore, the Producers have invited the court to examine, as exemplars of the adequacy of their pleadings, the allegations of Alan Brown in the Brown Case and the allegations of CeBar Farms, Jerry Lyon, and Barbara Lyon in the CeBar Farms Case. The court agrees that its ruling may use these pleadings as exemplars, but hastens to add that it has reviewed the pleadings of all of the individual Producers or groups of Producers in reaching its conclusions. The Producers contend that, for each of the five alleged misrepresentations and for each

plaintiff, they have adequately pleaded each of the five requirements addressed by the court in *Brown II* —identity of speaker and recipient; time, place, and manner; content of the alleged misrepresentation; falsity and knowledge thereof; and the fraud pleadings taken as a whole. *See Brown II*, 173 F.R.D. at 666–72. The court finds, however, that its inquiry can be focused further, by concentrating on the fourth requirement, the one that constituted the "fatal flaw" in each of the prior versions of the complaints, the pleading of falsity and knowledge thereof.

First, in each case, and for each plaintiff, the Producers allege that the Elevator misrepresented that it would be responsible for commissions and margin calls. The Producers claim to have alleged adequately that these representations were fraudulent, because,

> In its April 13, 1996, letter to all holders of HTA contracts, North Central announced that the Plaintiffs would have to pay any unfavorable margin on the futures positions in order to roll the contract forward: This, in effect, passed on these charges to the producers in direct contradiction of the prior representation. In fact, North Central billed plaintiffs for margin calls North Central claimed that it had to pay.

Plaintiffs' Joint Brief, p. 7. Second, as to the alleged falsity of North Central's representation that the Producers' only risk was "basis risk," the Producers assert that the following allegations are adequate:

> North Central subjected producers to moves in corn futures contracts traded on the Chicago Board of Trade and billed

---

4. The First Amended And Substituted Complaint in the Brown Case was 61 pages long; the Second Amended And Substituted Complaint is 230 pages long. The First Amended And Substituted Complaint in the CeBar Farms Case was 38 pages long; the Second Amended And Substituted Complaint is 91 pages long. The Producers admit that the Second Amended And Substituted Complaint in each case "contains much redundancy," but asserts that such redundancy results from the court's requirements, as stated in *Brown II*, and that "it would be unfair to declare, on the one hand, that plaintiff[s] cannot prove an allegation of fraud at trial unless it is specifically pleaded, and on the other hand, criticize the Complaint for being prolix and redundant." Plaintiffs' [Joint] Brief In Resistance To North

Central's Motion To Dismiss Counts II, III, IV, And V Of Plaintiffs' Second Substituted Complaint [Plaintiffs' Joint Brief], p. 1. Although the Elevator has specifically attacked the Second Amended Complaints as "mock[ing] the requirements of F.R.C.P. Rule 8 that the complaint contain a 'short and plain' statement of the claim," Defendant's [Joint] Memorandum In Support Of Motion To Dismiss Second Amended And Restated Complaint [Defendant's Joint Brief], p. 1, the court will not specifically address the question of excessive length or redundancy of the pleadings. The court finds that the motions to dismiss can and should be resolved on the adequacy of the *content* of the repleaded complaints, rather than on their conceded redundancy and lack of brevity.

producers for North Central's losses in margin on the Chicago Board of Trade. In its April 13, 1996, letter to all holders of HTA contracts, North Central announced that the Plaintiffs would have to pay any unfavorable margin on the futures position in order to roll the contract forward. This, in effect, passed on these charges to the producers in direct contradiction of the prior representation. In fact, North Central billed plaintiffs for the margin calls North Central claimed that it had to pay.

*Id.* at 7–8. Next, the Producers contend that they have adequately pleaded the falsity of representations that transactions were made for the sellers (the Producers) on the Chicago Board of Trade (CBOT), because they have alleged that "[t]rades were never made for the individual farmers as represented to them, and North Central now admits this fact." *Id.* at 8.

Fourth, as to the falsity of the representation that the HTAs could be "rolled" on an unlimited basis, the Producers contend that the following allegations are sufficient:

> [The] January 12, 1996, letter from North Central to plaintiffs which stated that *now* "a designation must be made as to which crop year the contract was made for" and that the contract could only be rolled within a crop year, [was] contrary to prior statements and practice.

*Id.* at 9. Finally, as to the falsity of the representation that, if the Producer was dissatisfied with the HTA price, the Producer could sell for cash and roll the HTAs, the Producers point to the following allegations as sufficient:

> [The] January 12, 1996, letter from North Central to plaintiffs which stated that *now* "a designation must be made as to which crop year the contract was made for" and that the contract could be rolled within a crop year, [was] contrary to prior statements and practice. In its April 13, 1996, letter to all holders of HTA contracts, North Central announced that the Plaintiffs would have to pay any unfavorable margin on the futures position in order to roll the contract forward.

*Id.* at 10.

The court finds that the Producers' characterizations of their pleadings in their briefs are indeed accurate reflections of the content of the actual pleadings of falsity by each of the Producers. *See, e.g.,* Brown Case, Second Amended And Substituted Complaint, Division IV (Facts), ¶¶ 25–26 and Count II, Allegations of Alan Brown, ¶ 5. Therefore, the court may use the Producers' own summary as the basis for its discussion here.

## II. LEGAL ANALYSIS

### A. Requirements For Pleading Fraud

■ Rule 9(b) of the Federal Rules of Civil Procedure "requires a plaintiff to allege with particularity the facts constituting the fraud." *See, e.g., Independent Business Forms v. A–M Graphics,* 127 F.3d 698, 703 n. 2 (8th Cir.1997). *See also Roberts v. Francis,* 128 F.3d 647, 651 (8th Cir.1997) ("Under Rule 9(b), '[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity.' "). "When pleading fraud, a plaintiff cannot simply make conclusory allegations." *Roberts,* 128 F.3d at 651 (citing *Commercial Property Inv., Inc. v. Quality Inns Int'l,* 61 F.3d 639, 644 (8th Cir.1995)). In this legal analysis, the court will focus on the adequacy of the pleadings of fraud in one respect in which the court has found the two previous attempts to be fatally flawed: the pleading of falsity and knowledge thereof.

#### 1. Pleading falsity and knowledge thereof

■ In light of the requirements imposed by Rule 9(b), in its two previous rulings, this court has held that

> general averments of the defendants' knowledge of material falsity will not suffice. Consistent with *Fed.R.Civ.P.* 9(b), the complaint must set forth specific facts that make it reasonable to believe that defendant[s] knew that a statement was materially false or misleading.

*See Brown II,* 173 F.R.D. at 669 (quoting *Lucia v. Prospect Street High Income Portfolio, Inc.,* 36 F.3d 170, 174 (1st Cir.1994), in turn quoting *Serabian v. Amoskeag Bank Shares, Inc.,* 24 F.3d 357, 361 (1st Cir.1994)); *Brown I,* 951 F.Supp. at 1408 (quoting *DeWit v. Firstar Corp.,* 879 F.Supp. 947, 989–90 (N.D.Iowa 1995), in turn quoting *Lucia,* 36

F.3d at 174). This theme requires some further development here.

At oral arguments, counsel for the Producers suggested that in requiring such specificity, this court exceeded the requirements stated by the Eighth Circuit Court of Appeals, for example, in *Commercial Property Inv., Inc. v. Quality Inns Int'l,* 61 F.3d 639, 644 (8th Cir.1995). However, in *Commercial Property Investments,* the Eighth Circuit Court of Appeals stated plainly that "conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Commercial Property Inv., Inc.,* 61 F.3d at 644. Furthermore, the requirement that a fraud claim plead facts from which falsity and knowledge of falsity can reasonably be inferred, this court finds, is analogous to—if not simply a paraphrase of—the rule recently espoused by the Eighth Circuit Court of Appeals that where, as here, " 'allegations of fraud are explicitly or ... implicitly based only on information and belief, the complaint must set forth the source of the information and the reason for the belief' " in order to satisfy Rule 9(b). *Parnes v. Gateway 2000, Inc.,* 122 F.3d 539, 550 (8th Cir.1997) (quoting *Romani v. Shearson Lehman Hutton,* 929 F.2d 875, 878 (1st Cir.1991)).

Furthermore, although Rule 9(b) also provides that "[m]alice, intent, knowledge, and other conditions of mind of a person may be averred generally," FED.R.CIV.P. 9(b), the First Circuit Court of Appeals has explained that

> Rule 9(b)'s relaxation of the scienter requirement is not intended to allow plaintiffs to 'base claims of fraud on speculation and conclusory allegations. Therefore, to serve the purposes of Rule 9(b), we require plaintiffs to allege facts that give rise to a strong inference of fraudulent intent.' *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994) (citations and internal quotations omitted). A securities plaintiff must allege " 'specific facts that make it reasonable to believe that defendant[s] knew that a statement was materially false or misleading.' " *Serabian,* 24 F.3d at 361 (quoting *Greenstone v. Cambex Corp.,* 975 F.2d 22, 25 (1st Cir.1992)). We impose this heightened requirement " 'even when the fraud relates to matters

peculiarly within the knowledge of the opposing party.' " *Lucia,* 36 F.3d at 174 (quoting *Romani,* 929 F.2d at 878).

*Suna v. Bailey Corp.,* 107 F.3d 64, 68 (1st Cir.1997). *See also Lovelace v. Software Spectrum, Inc.,* 78 F.3d 1015, 1019 (5th Cir. 1996) (also holding, in another securities fraud case, that Rule 9(b) was not satisfied where " 'the complaint contains no assertions of any fact that makes it reasonable to believe that the defendants knew that any of their statements were materially false or misleading when made,' " quoting *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1069 (5th Cir.1994)). This court's requirement that the Producers plead facts that make it reasonable to believe that the Elevator or its representatives knew that their statements were false or misleading at the time those statements were made simply is not out of step with the requirements of the Eighth Circuit Court of Appeals or these other federal courts of appeals.

The Producers rely entirely on allegations that the Elevator's subsequent conduct was contrary to its alleged representations as their pleading of facts giving rise to reasonable inferences that the alleged misrepresentations were false when made. In response, the Elevator has repeatedly asserted that the Producers have alleged no more than broken promises, which are not facts from which it can reasonably be inferred that the Elevator knew *at the time the alleged misrepresentations were made* that those representations were false and known to be false.

#### 2. *Broken promises*

It is the general rule that broken promises are not actionable as fraud. *See, e.g., Northwest Airlines, Inc. v. Astraea Aviation Servs., Inc.,* 111 F.3d 1386, 1393 (8th Cir. 1997) (applying Minnesota law, the court wrote, "Broken promises generally do not constitute fraud ... unless the plaintiff shows 'affirmative evidence' that the promisor had no intention to perform," citing *International Travel Arrangers, infra,* and *Hayes v. Northwood Panelboard Co.,* 415 N.W.2d 687, 690 (Minn.Ct.App.1987)); *International Travel Arrangers v. NWA, Inc.,* 991 F.2d 1389, 1402 (8th Cir.) ("The general rule

in Minnesota is that broken promises are not actionable fraud."), *cert. denied,* 510 U.S. 932, 114 S.Ct. 345, 126 L.Ed.2d 309 (1993); *Coenco, Inc. v. Coenco Sales, Inc.,* 940 F.2d 1176, 1178 (8th Cir.1991) (under Arkansas law, "[a] fraud case cannot be won by a showing of broken promises and unrealized business potential. [The plaintiff] had to show not only that the defendants did not keep their promises, but also that they did not intend to keep them when they made them (or that they knew they could not keep them)," citing*Barnett v. Arkansas Transp. Co.,* 303 Ark. 491, 800 S.W.2d 429, 430 (1990)); *H.J., Inc. v. International Tel. & Tel. Corp.,* 867 F.2d 1531, 1547 (8th Cir.1989) ("Simply put, breaking a promise or failing to fulfill it does not constitute fraud" under Minnesota law, also citing *Hayes,* 415 N.W.2d at 690). Furthermore, "[a] contract claim cannot be converted into a fraud claim, even when there is a bad faith breach of the contract." *Northwest Airlines, Inc.,* 111 F.3d at 1393 (citing *Wild v. Rarig,* 302 Minn. 419, 234 N.W.2d 775, 790 (1975), *appeal dismissed and cert. denied,* 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307 (1976)). The reason for this rule is that " '[i]t would be as wrong morally as legally, as offensive to logic as to law, to hold that mere denial and nonperformance are evidence that, if a promise was made, it was made fraudulently.... Bad, indeed, would be the case of the honest man who has made no such promise if, when falsely charged with it, he may not deny it without having his truth considered as some evidence either that there was such undertaking or that it was deceitfully made.' " *International Travel Arrangers,* 991 F.2d at 1403 (quoting *Crosby v. Crescent Oil Co.,* 192 Minn. 98, 255 N.W. 853, 857 (1934)).

■ Iowa has also adopted the rule that broken promises do not generally give rise to any inference of fraudulent intent at the time the promises were made. *See Magnusson Agency v. Public Entity Nat'l Company–Midwest,* 560 N.W.2d 20, 28–29 (Iowa 1997); *Robinson v. Perpetual Servs. Corp.,* 412 N.W.2d 562, 565–66 (Iowa 1987); *Irons v. Community State Bank,* 461 N.W.2d 849, 854 (Iowa.Ct.App.1990). In *Robinson,* which the Producers cite, the Iowa Supreme Court wrote,

Under Iowa law, a statement of intent to perform a future act is actionable if when made the speaker had an existing intention not to perform. *Hagarty v. Dysart–Geneseo Community School Dist.,* 282 N.W.2d 92, 95 (Iowa 1979); *Grefe v. Ross,* 231 N.W.2d 863, 867 (Iowa 1975). However, in establishing the present intent not to perform, "[t]he fact the agreement was not performed does not alone prove the promissor did not intend keeping it when it was made." *Lamasters v. Springer,* 251 Iowa 69, 74, 99 N.W.2d 300, 303 (1959); *see also Hagarty,* 282 N.W.2d at 95.

*Robinson,* 412 N.W.2d at 565. *See also Magnusson Agency,* 560 N.W.2d at 28–29 ("However, in establishing intent, the fact that an agreement was not performed does not alone prove that the promisor did not intend to keep the promise when it was made," citing *Robinson,* 412 N.W.2d at 565); *Irons,* 461 N.W.2d at 854 ("[W]hen a promise is made by one individual in good faith with the expectation of carrying that promise out, the mere fact the promise was not fulfilled does not, alone, constitute actionable fraud. For the breaking of such a promise to be actionable as fraud, the speaker must have had an existing intent not to perform at the time the promise was made," citing PROSSER, THE LAW OF TORTS § 109, pp. 730–31 (4th ed.1971), and *Robinson,* 412 N.W.2d at 565–66).

■ Again, there is an exception to this rule, which provides that a claim of promissory fraud may lie if, when the promise was made, the promisor had no intention to perform it. *See Northwest Airlines, Inc.,* 111 F.3d at 1393; *International Travel Arrangers,* 991 F.2d at 1402; *Coenco, Inc.,* 940 F.2d at 1178. *Accord Robinson,* 412 N.W.2d at 565; *Magnusson Agency,* 560 N.W.2d at 28–29; *Irons,* 461 N.W.2d at 854. However, to prevail on such a claim, the plaintiff must present "affirmative evidence" that the promisor had no intention to perform when the promise was made. *Id.; International Travel Arrangers,* 991 F.2d at 1403. Furthermore, applying the requirements of Rule 9(b), as explained above, it would also be necessary for the plaintiff to *plead facts* from which it could reasonably be inferred that the promisor had no such intention to perform at the time the promisor made allegedly false

representations. *See* FED.R.CIV.P. 9(b); *Parnes,* 122 F.3d at 550; *Suna,* 107 F.3d at 68; *Lovelace,* 78 F.3d at 1019; *Lucia,* 36 F.3d at 174; *Serabian,* 24 F.3d at 361. *Cf. International Travel Arrangers,* 991 F.2d at 1403 (holding that inferences from the fact of subsequent non-performance are insufficient to *prove* fraud).

Such affirmative evidence or pleading of facts from which inferences of an intention not to perform could arise would include evidence that, at the time the promises were made, the defendant would have been unable to perform them or had already undertaken action that was inconsistent with its commitments. *See International Travel Arrangers,* 991 F.2d at 1403. Similarly, the Iowa Supreme Court explained in *Robinson* what facts would reasonably give rise to inferences of an intent not to perform a promise at the time the promise was made:

> It may ... be inferred from the circumstances, such as the defendant's insolvency or other reason to know that he cannot pay, or *his repudiation of the promise soon after it is made, with no intervening change in the situation,* or his failure even to attempt any performance, or his continued assurances after it is clear that he will not do so.

*Robinson,* 412 N.W.2d at 566 (quoting W. PROSSER, THE LAW OF TORTS § 109, at 730–31 (4th ed.1971), with emphasis added by the Iowa Supreme Court).

### 3. The Producers' pleading of falsity and knowledge thereof

■ The court concludes that the Producers have once again failed to plead falsity of alleged misrepresentations and knowledge thereof with the particularity required by Fed.R.Civ.P. 9(b). The second amended complaint in each case is replete with *conclusory* assertions that Vic Steding and Dan Matheson—the purported speakers of the misrepresentations—knew, at the time they made each alleged misrepresentation, that their statements were false, or that the Elevator had no intention of adhering to the promises they were making. *See, e.g.,* Brown Case, Second Amended And Substituted Complaint, Count II, Allegations of Alan Brown, ¶ 5(a); CeBar Farms Case, Second Amended And Substituted Complaint,

Count II, Allegations of CeBar Farms, Jerry Lyon, Barbara Lyon, ¶ 5(a). However, such conclusory allegations, even of knowledge of falsity, are insufficient. *See generally Roberts,* 128 F.3d at 651 ("When pleading fraud, a plaintiff cannot simply make conclusory allegations."); *Commercial Property Inv., Inc.,* 61 F.3d at 644 (same). *See also Suna,* 107 F.3d at 68 ("Rule 9(b)'s relaxation of the scienter requirement is not intended to allow plaintiffs to base claims of fraud on speculation and conclusory allegations"; internal quotation marks omitted); *Lucia,* 36 F.3d at 174 ("[G]eneral averments of the defendants' knowledge of material falsity will not suffice," quoting *Serabian,* 24 F.3d at 361); *Serabian,* 24 F.3d at 361 (same). Thus, the court must look for allegations of *facts* from which it is reasonable to believe that the Elevator or these specific representatives knew that the alleged misrepresentations were materially false or misleading *when made. See Parnes,* 122 F.3d at 550 (where " 'allegations of fraud are explicitly or ... implicitly based only on information and belief, the complaint must set forth the source of the information and the reason for the belief' " in order to satisfy Rule 9(b)); *Suna,* 107 F.3d at 68 (a fraud plaintiff must allege "specific facts that make it reasonable to believe that defendant[s] knew that a statement was materially false or misleading"; internal quotation marks and citations omitted); *Lovelace,* 78 F.3d at 1019 (pleadings were inadequate where "the complaint contains no assertions of any fact that makes it reasonable to believe that the defendants knew that any of their statements were materially false or misleading when made"); *Lucia,* 36 F.3d at 174 ("Consistent with *Fed. R.Civ.P.* 9(b), the complaint must set forth specific facts that make it reasonable to believe that defendant[s] knew that a statement was materially false or misleading."); *Serabian,* 24 F.3d at 361 (same).

■ The factual allegations upon which the Producers rely to establish the necessary reasonable inferences are allegations of subsequent breaches of the promises they contend were made in the alleged misrepresentations. Specifically, they point to the letters from the Elevator, dated January 12, 1996, and April 13, 1996, and the alleged failure of

the Elevator ever to make trades on the CBOT for the individual farmers. *See, e.g.,* Brown Case, Second Amended And Substituted Complaint, Division IV (Facts), ¶¶ 25–26, 28. These allegations of "broken promises," however, do not meet the requirements for pleading fraud. Again, the general rule is that broken promises are not actionable as fraud. *See, e.g., Northwest Airlines, Inc.,* 111 F.3d at 1392; *International Travel Arrangers,* 991 F.2d at 1402; *Coenco, Inc.,* 940 F.2d at 1178; *H.J., Inc.,* 867 F.2d at 1547. *See also Magnusson Agency,* 560 N.W.2d at 28–29; *Robinson,* 412 N.W.2d at 565; *Irons,* 461 N.W.2d at 854. Also, "[a] contract claim cannot be converted into a fraud claim, even when there is a bad faith breach of the contract." *Northwest Airlines, Inc.,* 111 F.3d at 1393. To plead the exception to this rule, to the satisfaction of the requirements of Rule 9(b), this court noted above that the Producers must allege facts in the form of affirmative evidence from which it can reasonably be inferred that the Elevator could not or did not intend to perform its promises at the time the promises were made. Such facts would include facts from which it could be inferred that, at the time the promises were made, the defendant would have been unable to perform its promises or had already undertaken action that was inconsistent with its commitments, *see International Travel Arrangers,* 991 F.2d at 1403, or that the defendant was insolvent, knew that it could not perform the promises, repudiated the promises soon after they were made, with no intervening change in the situation, failed even to attempt any performance, or continued to offer assurances after it was clear that it would not perform as promised. *See Robinson,* 412 N.W.2d at 566. No such facts are alleged here.

There are no allegations that the Elevator could not perform the promises made by Stedings or Matheson at the time those promises were made. To the contrary, the Producers allege that, for example, they were allowed to "roll" some of the HTAs, even several times. *Cf. International Travel Arrangers,* 991 F.2d at 1403 (adequate facts would include facts that, at the time the promises were made, the defendant would have been unable to perform its promises or had already undertaken action that was in-

consistent with its commitments); *Robinson,* 412 N.W.2d at 566 (facts would include that the defendant failed even to attempt performance). The Producers do allege that the Elevator repudiated certain representations, but not until years or months after the representations were made, by changing the manner in which HTAs could be rolled, and these allegations are accompanied by allegations that circumstances had indeed changed in the interim with increases in the price of corn and the Elevator's inability then to meet its own contractual obligations. *See Robinson,* 412 N.W.2d at 566 (adequate facts would include facts that the defendant repudiated the promises soon after they were made, with no intervening change in the situation).

On their third try, the court finds that, if anything, the Producers' fraud allegations are adequate only to allege breach of contract, perhaps bad faith breach of contract. They are not, however, adequate to allege fraud pursuant to FED.R.CIV.P. 9(b). Thus, the question is whether these fraud claims should now be dismissed with prejudice.

### B. Dismissal With Prejudice

In *Brown II,* this court made clear that the Producers were being "granted one **final** opportunity to attempt to plead fraud with particularity." *Brown II,* 173 F.R.D. at 675. As the court has warned in both *Brown I* and *Brown II,* this court rejects the notion that a party presenting deficient pleadings must automatically be given an opportunity to replead claims before the court dismisses their deficient claims outright. *See Brown II,* 173 F.R.D. at 674; *Brown I,* 951 F.Supp. at 1409 (citing, *inter alia, DeWit v. Firstar Corp.,* 904 F.Supp. 1476, 1502–05 & n. 21 (N.D.Iowa 1995)). Certainly, nothing compels the court to allow any party *four* opportunities to try to make pleadings conform to Rule 9(b) or to rectify deficiencies previously identified by the court, even if other claims presented in the same complaint are viable. *Cf. Brown II,* 173 F.R.D. at 674 (expressing reluctance to allow these plaintiffs a *third* opportunity to attempt to plead fraud with particularity, and permitting repleading largely because other claims were viable). This time, therefore, the Producers' fraud

claims in each action will be dismissed *with prejudice.*

### III. CONCLUSION

Whether they are "old wine in new bottles" or "new—but bad—wine in old bottles," the fraud claims in the second amended complaints do not pass muster. Rather, they continue to suffer from deficiencies identified in each of the previous vintages. Specifically, the fraud claims do not adequately allege falsity or knowledge thereof, because they offer only conclusory allegations and fail to allege facts from which it could reasonably be inferred that the alleged misrepresentations were false when made or known by the Elevator or its representatives to be so. The Producers have alleged nothing beyond broken promises, which, as alleged here, are not sufficient factual basis for fraud claims. Furthermore, because the pleadings of fraud here were the Producers' *third* attempt to state such claims to the standards dictated by FED.R.CIV.P. 9(b) and the court's prior decisions, and they still fall short, this time, the fraud claims must be dismissed with prejudice.

Therefore, the Elevator's motions to dismiss Counts II, III, IV, and V of the Second Amended And Substituted Complaint in each case are **granted.** Counts II, III, IV, and V of the Second Amended And Substituted Complaint in each case are **dismissed with prejudice.**

**IT IS SO ORDERED.**