TORRUELLA, Chief Judge.
 

 On May 26, 1994, Plaintiffs-Appellants Vicki Match Suna (“Suna”) and Lori Rosen (“Rosen”) (collectively “plaintiffs” or “appellants”) brought this class action suit against Bailey Corporation (“Bailey”) and individual
 
 *-1510
 
 officers
 
 [1]
 
 of the corporation (collectively “defendants” or “appellees”) on behalf of all persons who purchased Bailey’s common stock during the class period. The suit alleges that appellees violated Section 12 of the Securities Act
 
 [2]
 
 of 1938 and Sections 10(b)
 
 [3]
 
 and 20(a)
 
 [4]
 
 of the Securities Exchange Act of 1934, as well as Rule 10b-5
 
 [5]
 
 promulgated by the Securities and Exchange Commission (“SEC”). Appellants allege that appellees made, or caused to be made, materially false and misleading statements either through Bailey’s corporate documents or through analysts’ reports disseminated to the public. On November 10, 1994, the District Court of New Hampshire granted appellees’ motion to dismiss this complaint for failure to comply with the pleading requirements of Federal Rule of Civil Procedure 9(b). The district court then allowed appellants to amend their complaint, but rejected the first amended complaint appellants submitted. The district court “reluctantly grant[ed] plaintiffs leave to file a second amended complaint,” Order of November 10,1994, at 2, but cautioned that if “the second complaint fail[ed] to satisfy the pleading requirements, the action [would] then be dismissed with prejudice.”
 
 Id.
 
 On September 1, 1995, appellants filed a Second Amended Complaint, which the district court ruled did not meet Rule 9(b)’s pleading requirements. Order of Dec. 29, 1995. The district court then dismissed the action with prejudice. Appellants now appeal the dismissal of the Second Amended Complaint.
 

 BACKGROUND
 

 We accept as true all facts alleged in appellants’ Second Amended Complaint.
 
 Shields v. Citytrust Bancorp, Inc.,
 
 25 F.3d
 
 *-1509
 
 1124, 1125 (2nd Cir.1994). Bailey manufactures molded plastic exterior components and supplies them to North American original equipment manufacturers of cars, light trucks, sport utility vehicles and minivans. Bailey’s primary customer is Ford Motor Company, which accounted for approximately ninety-three percent of Bailey’s sales in the nine months ending April 25, 1993. Of the remaining sales, three percent were to General Motors Corporation and four percent to other customers.
 

 During the class period, the individual defendants signed various SEC filings. Each received or had access to non-public reports and documents depicting Bailey’s financial condition and business prospects. Each participated in Bailey board meetings at which information about the company was discussed. A secondary public offering was held on August 18,1993, during which Bailey and the individual defendants sold shares at $11 each.
 

 On April 5, 1994, both Suna and Rosen purchased Bailey stock. During the class period, the stock reached a high of more than $18 per share.
 

 The public documents issued by Bailey and alleged by appellants to contain materially false and misleading statements include Bailey’s April 18,1993, Prospectus and Registration Statement, its 1993 Annual Report, and 10-K, quarterly reports to shareholders, and press releases. In addition, appellants contend that reports published by analysts regarding Bailey’s earnings prospects and its ability to continue to increase earnings per share are imputable to Bailey. Appellants contend that all of these documents artificially inflated the market price of Bailey common stock.
 

 Large sections of appellants’ brief and Second Amended Complaint are devoted to quoting at length from these documents. We will not reproduce all of these quotes, but will highlight relevant portions as becomes necessary throughout the opinion. Appellants contend that the statements at issue were false and misleading because Bailey’s anticipated growth did not continue and its revenue declined. The decline in revenue led to a decrease in the value of Bailey’s common stock to $6 1/8 per share. Appellants argue that the representations were “materially false and misleading because appellees knew, or recklessly disregarded, ... that Bailey’s profitability would decline sharply because of a much less profitable mix of parts to be supplied to Ford.” Appellant’s Brief at 8. They claim that Bailey knew or should have known that there was no reason to expect sustained growth based on knowledge gathered from, “among other things, a ‘26-week forecasts [sic] of production requirements,’ ”
 
 id.,
 
 supplied to Bailey by Ford. These forecasts allegedly indicated a shift in the product mix required by Ford. Appellants indicate that the product mix Ford was phasing out would prove more profitable than the product mix to which Bailey was shifting production. Appellants contend that Bailey should have disclosed that it was moving to a less profitable product mix.
 

 In September 1993, the investment firm of McDonald & Company Securities, Inc. (“McDonald”), in a publicly disseminated report, gave Bailey an “aggressive buy rating.” That report projected earnings per share for fiscal years 1994 and 1995 of $1.15 and $1.60 respectively. In December 1993, an analyst for Hancock ,Institutional Equity Services, an affiliate of Tucker Anthony, a co-lead underwriter of Bailey’s secondary offering, reviewed with defendant-appellee Leonard Heilman a written research opinion regarding Bailey that Hancock was about to disseminate publicly. The Hancock analyst informed Heilman of her earnings per share estimates and her methodology and assumptions in reaching those estimates. She also informed Heilman of her view regarding Bailey’s financial prospects. Following this conversation, Hancock publicly disseminated a very positive report on Bailey. Appellants contend that these reports contained materially false and misleading statements in the form of financial projections that were “wildly optimistic” and the result of “guidance” from Bailey.
 

 In a report regarding Bailey’s fiscal 1994 second quarter, ending January 31, 1994, Bailey claimed revenue and earnings increases, attributing the increases to “productivity improvements.” Bailey failed to disclose
 
 *-1508
 
 “that it was experiencing severe production problems at newly acquired mid-western plants,” which appellants contend could and did materially impact future earnings. Appellants acknowledge, however, that these production problems did not arise until February, 1994.
 

 On May 20, 1994, Bailey announced that it had earned $0.16 per share in its third quarter, in contrast to the projected $0.37 per share. This earnings shortfall was attributable to, among other things, a substantial change in product mix and production problems at Bailey’s newly acquired mid-western plants. After-this announcement, the market price of Bailey common stock fell to $6 1/8 per share.
 

 DISCUSSION
 

 We review the dismissal of a complaint
 
 de novo. Serabian v. Amoskeag Bank Shares, Inc.,
 
 24 F.3d 357, 361 (1st Cir.1994). “Generally, we will uphold a district court’s dismissal of a claim only if it appears that the plaintiff can prove no set of facts upon which relief may be granted.”
 
 Shields v. Citytrust Bancorp, Inc.,
 
 25 F.3d 1124, 1127 (2nd Cir. 1994). Nevertheless, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading requirement on plaintiffs alleging fraud.
 
 Lucia v. Prospect St. High Income Portfolio, Inc.,
 
 36 F.3d 170, 174 (1st Cir.1994). Rule 9(b) states: “In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally.” Fed.R.Civ.P. 9(b). “[A] complaint making such allegations must ‘(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.’ ”
 
 Shields,
 
 25 F.3d at 1127-28 (quoting
 
 Mills v. Polar Molecular Corp.,
 
 12 F.3d 1170, 1175 (2d Cir.1993)).
 

 The goals of Rule 9(b) are “ ‘to provide a defendant with fair notice of a plaintiffs claim, to safeguard a wrongdoing, and to protect a defendant against the institution of a strike suit.’ ”
 
 Id.
 
 at 1128 (quoting
 
 O’Brien v. National Property Analysts Partners,
 
 936 F.2d 674, 676 (2d Cir.1991)). Rule 9(b)’s relaxation of the scienter requirement is not intended to allow plaintiffs to “base claims of fraud on speculation and eonclusory allegations. Therefore, to serve the purposes of Rule 9(b), we require plaintiffs to allege facts that give rise to a strong inference of fraudulent intent.”
 
 Id.
 
 (citations and internal quotations omitted). A securities plaintiff must allege “ ‘specific facts that make it reasonable to believe that defendants knew that a statement was materially false or misleading.’”
 
 Serabian,
 
 24 F.3d at 361 (quoting
 
 Greenstone v. Cambex Corp.,
 
 975 F.2d 22, 25 (1st Cir.1992)). We impose this heightened requirement “ ‘even when the fraud relates to matters peculiarly within the knowledge of the opposing party.’ ”
 
 Lucia,
 
 36 F.3d at 174 (quoting
 
 Romani,
 
 929 F.2d at 878).
 

 We recently set forth guidelines intended to strike a balance between the pleadings required of plaintiffs in securities fraud litigation and the concern that defendants not be subject to strike suits intended to increase the amount of settlement awards rather than set forth a legitimate claim.
 
 See New England Data Servs., Inc. v. Becher,
 
 829 F.2d 286, 289 (1st Cir.1987).
 

 “First, [pjlaintiffs must plead more than that defendants acted irresponsibly and unwisely, but that they were aware that ‘mismanagement had occurred and made a material public statement about the state of corporate affairs inconsistent with the existence of the mismanagement.’ ”
 

 “Second, defendants may not be held liable under the securities laws for accurate reports of past successes, even if present circumstances are less rosy, ... and optimistic predictions about the future that prove to be off the mark likewise are immunized unless plaintiffs meet their burden of demonstrating intentional deception....”
 

 “Third, and finally, general averments of the defendants’ knowledge of material falsity will not suffice. Consistent with Fed. R.Civ.P. 9(b), the complaint must set forth ‘specific facts that make it reasonable to believe that defendants] knew that a statement was materially false or misleading.’
 
 Id.
 
 The rule requires that the partie-
 
 *-1507
 
 ular ‘ “times, dates, places or other details of [the] alleged fraudulent involvement’” of the actors be alleged.”
 

 Serabian,
 
 24 F.3d at 361. In order to succeed on their claim, appellants must have complied with these pleading requirements by showing that the statements presented to the public were false or misleading at the time they were made and showing that it is reasonable to believe that the defendants knew they were false or misleading. In addition, appellants must show that statements made were more than tempered predictions about the future that later proved incorrect.
 
 See id.
 
 at 366 (“It is well established that plaintiffs in a securities action have not alleged actionable fraud if their claim rests on the assumption that the defendants must have known of the severity of their problems earlier because conditions became so bad later on.”). We turn to appellants’ Second Amended Complaint.
 

 I.STATEMENTS IN BAILEY’S PROSPECTUS .
 

 A.
 
 Section 10(b) & Rule 10b-5 Claims
 

 The complaint quotes extensively from various Bailey corporate documents, alleging that these quotes were materially false and misleading. These statements tend to fall into two categories: (1) statements about past performance of the company; and (2) statements about future performance. The district court succinctly and accurately summarized the alleged false representations made by Bailey:
 

 1. The Company falsely stated that' it would achieve increased profits by moving production from its plant in Seabrook, New Hampshire, to newly acquired factories in Michigan. Complaint, ¶ 2.
 

 2. The Company knowingly issued false predictions regarding future earnings prospects during pre-offering road shows. Complaint, ¶ 5.
 

 3. When the Company made the public offering it knew but failed to disclose that its • profitability would decline sharply because of a much less profitable mix of parts to be supplied to Ford. Complaint, ¶ 8.
 

 4.The Company failed to disclose to the public “severe” problems it began experiencing at its Contour facility beginning in February, 1994 (i.e., 6 months after the first day of the public offering and after issuance of all but one of the public documents of 'which plaintiffs complain). Complaint, ¶ 13.
 

 Order of December 29,1995, at 6. Paragraph 62 of the Second Amended Complaint attempts to describe why these statements were false and misleading: “Bailey’s earnings would not continue to grow, they would decline materially due to a massive shift of Bailey’s production to a much less profitable product mix.” Second Amended Complaint at ¶ 62(a).
 

 Regarding statements about past performance, appellants present no argument that such statements were false or inaccurate. At most, appellants suggest that Bailey’s presentation of figures indicating past performance somehow imply that the company would attain the same level of profitability in the future. In presenting figures of past performance, Bailey’s prospectus does not in any way project future earnings.
 

 Instead, the contention here is that the company’s predictions would prove to be false and that earnings would not continue to grow. Appellants contend that Bailey’s Prospectus promised increased revenue.
 
 See
 
 Second Amended Complaint, ¶¶ 54, 55, 57, 61. The statements cited by appellants, however, make no such representations and, in fact, are tempered with cautionary language. For example, appellants cite the following sentence to support its contention that Bailey’s prospectus indicated that revenues would continue to grow rapidly: ‘While the Company expects continued revenue growth, revenue may or may not increase at the same rate as the number of components in the Company’s product line.” This statement is certainly not a promise of future profitability and contains language indicating uncertainty as to future revenues. Appellants cite the following statement as indicating that Bailey would become “even more profitable”: “The Company intends to transfer certain labor intensive operations from Seabrook to Hills-
 
 *-1506
 
 dale and Madison to take advantage of lower average labor cost and more fully utilize existing capacity.” Again, there is no suggestion or promise of increased profits in this statement. Finally, the following is quoted in support of the contention that the company had secured supply agreements that would make up for the loss of certain discontinued products: “[T]he Company believes that these components in aggregate, will provide the Company with opportunities comparable to those that have been provided by the Taurus/Sable and Tempo/Topaz models.” While the company states that it believes the opportunities will be comparable, the statement contains no promise to that effect.
 

 Bailey’s 1993 Annual Report to Shareholders, registered with the SEC on October 28, 1993, indicated that Bailey “expected [certain accomplishments of 1993] to help to sustain growth and strengthen our competitive position in future years.” That same document labels Bailey’s mid-western plants as “cost-efficient.” Additionally, an annual report filed on a Form 10-K for fiscal year 1993 stated that the acquisition of the mid-western plants provided the company with “additional manufacturing capacity at lower average labor costs than prevail at the Company’s Sea-brook[, New Hampshire] facility.” Appellants contend that these statements were misleading because Bailey failed to disclose that the shift in production would “materially reduce the Company’s revenue and earnings,” Complaint, ¶ 74, and because the mid-western plants were not cost efficient. No facts have been provided in support of the contention that Bailey had reason to know that the production shift would be less profitable, nor do appellants indicate why Bailey should have known, prior to operating a plant with lower labor costs, that the plant would be less cost efficient than the Seabrook plant, at which labor costs were higher.
 

 “Certainly, predictions ‘are not exempt’ from the securities laws ... but they are actionable only if the forecast might affect a ‘reasonable investor’ in contemplating the value of a corporation’s stock.”
 
 Colby v. Hologic, Inc.,
 
 817 F.Supp. 204, 211 (D.Mass. 1993) (citation omitted). While these statements may convey the company’s desire for profitable performance in the future, they do not convey any promises about future performance and do not project specific numbers that the company will certainly attain. No reasonable investor would have read these statements, especially as they are accompanied by cautionary language, as promises or guarantees of future performance.
 

 The statements above, standing alone, are not false or misleading. Had the appellants presented facts known by Bailey, and contemporaneous with the statements above, that would show that Bailey’s anticipated success was unlikely, such facts would have adequately alleged a claim of securities fraud. Instead, all appellants present as factual support is the receipt by Bailey of 26-week forecasts from Ford, with no indication from appellants as to what information contained within those reports contradicts Bailey’s projections, other than a vague reference in paragraph 67 of the complaint that, “[a]s [will be] set forth below, Ford’s demand for certain parts supplied by Bailey
 
 was
 
 lower in the Company’s first calendar quarter of 1994 and Bailey knew that would be so as of the day [of] the Offering.” The only information “set forth below” regarding a decrease in Ford’s demand for parts was discussed in a Hancock analyst’s report publicly disseminated on Jume 8, 1994. The comments regarding Ford in this document suggest that, at the time the report was prepared, nearly a year after the Prospectus, Annual Report and Form 10-K were issued, Ford was scaling back production plans. This hardly amounts to a contemporaneous factual allegation indicating that statements made by Bailey in August of 1993 regarding future prospects were false or misleading, or that it was unreasonable for Bailey to make such statements about future profitability.
 

 In addition, appellants state that “Bailey’s earnings ... would decline materially due to a massive shift of Bailey’s production to a much less profitable product mix.” Appellants allege no facts to indicate that Bailey had any reason to suspect at the time the statements were made that the product mix would prove to be less profitable.
 

 Although appellants specify statements that they contend were fraudulent, identify
 
 *-1505
 
 the speaker, and state where and when the statements were made, they fail, on every allegation of fraud, to explain why the statements were fraudulent. Appellants offer no factual support for their conclusory allegations that Bailey knew that a product mix would become unprofitable or that production problems would arise at a plant it was not even operating at the time the Prospectus was issued. Thus, there is no factual support that Bailey made materially false or misleading statements when it presented positive future expectations. Appellants repeatedly recite their contention that the “26-week forecasts” received from Ford indicated to Bailey Ford’s projected supply requirements through the company’s “fiscal third quarter,” the time at which the actual requirements allegedly diminished, causing the decline in Bailey’s earnings per share. Appellants fail, however, to identify information in the forecasts that would have put Bailey on notice that supply requirements would decline. That Ford presented forecasts of its requirements does not guarantee that forecasts presented to Bailey 26 weeks prior to the third quarter, and perhaps contemporaneously with the dissemination of the Bailey Prospectus, accurately identified the actual requirements of the third quarter. Those requirements may have changed dramatically after Ford presented Bailey with its forecasts for that third quarter. Because appellants fail to cite with specificity anything in the 26-week forecasts that would have put Bailey on notice of a decline in products to be supplied, they have not shown that Bailey’s expectations were unreasonable or fraudulently presented. That Bailey may have been mistaken in its projections, which were apparently based on facts that appellants do not contend were false, is not enough.
 

 “[Appellants] record[] statements by defendants predicting a prosperous future and hold[ ] them up against the backdrop of what actually transpired_ This technique is sufficient to allege that the defendants were wrong; but misguided optimism is not a cause of action, and does not support an inference of fraud. We have rejected the legitimacy of ‘alleging fraud by “hindsight.” ’ ”
 
 Shields,
 
 25 F.3d at 1129. “Because all of plaintiffs’ 10(b) claims rely fundamentally on such unsupported allegations, the district court properly dismissed these claims for failure to meet Rule 9(b).”
 
 Lucia,
 
 36 F.3d at 174.
 

 B.
 
 Sections 12(2) and 20(a)
 

 Appellants contend that the district court improperly dismissed their claims arising under Section 12(2) of the Securities Act of 1933 and Section 20(a) of the Securities and Exchange Act of 1934. They argue that the district court’s dismissal of their complaint was pursuant to Rule 9(b). As appellants correctly note, neither of these claims contain an element of fraud and Rule 9(b)’s pleading with particularity requirements do not apply. Nevertheless, the district court properly dismissed these claims as well.
 

 1.
 
 Section 12(2)
 

 First, for a violation of Section 12(2), the plaintiff must show that the defendant made an untrue statement of a material fact or omitted such material fact. Appellants contend that Rule 9(b)’s pleading requirements do not apply to claims under Section 12(2), claiming that Section 12 does not contain an element of fraud. As we find that appellants have failed to even meet the minimal requirements of a Section 12(2) claim, we need not decide whether their Section 12(2) claim sufficiently sounds in fraud such that Rule 9(b)’s pleading requirements apply.
 

 Appellants have failed to point us to any untrue statements of material fact, nor have they identified material facts whose omission would render a previous statement misleading. “[I]nformation is ‘material’ only if the disclosure would alter the ‘total mix’ of facts available to the investor and ‘if there is a substantial likelihood that a reasonable shareholder would consider it important’ to the investment decision.”
 
 Milton v. Van Dorn Co.,
 
 961 F.2d 965, 969 (1st Cir.1992) (quoting Basic,
 
 Inc. v. Levinson,
 
 485 U.S. 224, 231-32, 108 S.Ct. 978, 983-84, 99 L.Ed.2d 194 (1988)). The statements that appellants challenge were either true at the time they were made and continued to be so, or consisted of future predictions that later
 
 *-1504
 
 proved to be incorrect. These predictions were not of the sort that would need to be corrected by a later statement. The statements addressed by appellants indicate that Bailey projected positive future earnings, but these statements were tempered with language indicating that Bailey did not, and could not, guarantee the future profitability of the company. “ ‘Soft,’ ‘puffing’ statements such as these generally lack materiality because the market price of a share is not inflated by vague statements predicting growth.”
 
 Raab v. General Physics Corp.,
 
 4 F.3d 286, 289 (4th Cir.1993);
 

 Appellants’ complaint contends that the market’s reliance on statement by Bailey artificially inflated the company’s price per share. We find, however, that “[n]o reasonable investor would rely on these statements, and they are certainly not specific enough to perpetrate a fraud on the market. Analysts and arbitrageurs rely on facts in determining the value of a security, not mere expressions of optimism from company spokesmen.”
 
 Id.
 
 at 290. A reasonable purchaser would know that these statements consisted of optimistic predictions of future potential and would not have been misled by them. Therefore, the district court properly dismissed appellant’s Section 12(2) claims.
 

 2.
 
 Section 20(a)
 

 Finally, regarding the Section 20(a) claim, which attempts to attribute joint and several liability to the individual defendants as “control persons,” appellants have failed to allege an underlying violation of the securities acts. The district court properly dismissed appellants’ Section 20(a) claims.
 

 II. REPORTS OF SECURITIES ANALYSTS
 

 Appellants also allege that Bailey should be held liable for false and misleading statements made by analysts in independent reports disseminated to the public. The first of these reports was disseminated to the public by McDonald. Appellants allége that the analyst who prepared that report, David Garrity, spoke with Leonard Heilman, an officer of the company, in preparing the report. Garrity reviewed with Heilman his earnings estimates and the methodology and/or assumptions of those estimates. Thereafter, McDonald disseminated a report giving Bailey an “aggressive buy rating.” The report stated that it expected Bailey to earn $1.15 per share in fiscal 1994 and $1.60 per share in fiscal 1995. Finally, the report stated that it estimated that the price of Bailey stock would reach $20 per share, with a down-side risk to the $10 level.
 

 The second report, prepared by Hancock analyst Jane Gilday, was reviewed with Heil-man on or about December 20, 1993. Gilday informed Heilman of her revenue and earnings per share estimates and the methodology and assumptions used in reaching those estimates. She also indicated to Heilman her opinion of Bailey’s financial prospects. Hancock’s report, publicly disseminated on December 21, 1993, projected Bailey’s earnings per share at $1.05 for fiscal 1994 and $1.25 for fiscal 1995. The report goes on to make predictions regarding Bailey’s profitability in the coming year based on growth in its parts business and the company’s shift of manufacturing to the mid-western plants.
 

 A third report, disseminated to the public by McDonald on March 18, 1994, indicated that McDonald had concerns about Bailey’s product mix shift and lowered its earnings per share forecasts slightly. The report still gave Bailey an “Aggressive Buy” rating.
 

 After Bailey disclosed that its earnings for the third quarter of fiscal 1994 were only $0.16, Hancock lowered Bailey’s investment rating from buy to sell, based in part on the “serious credibility problem” of Bailey management. Hancock called Bailey’s third quarter earnings “a major negative surprise.”
 

 In support of their argument that Bailey should be held liable for alleged misstatements in these analysts’ reports, appellants cite cases in which courts have held that a defendant company may be held liable for any false or misleading statements contained in analysts’ reports.
 
 See, e.g., Elkind v. Liggett & Myers, Inc.,
 
 635 F.2d 156, 163 (2d Cir.1980) (holding that a company may sufficiently entangle itself with analysts’ forecasts to render the predictions attributable to the
 
 *-1503
 
 company, but finding no such liability);
 
 In re RasterOps Corp. Sec. Litig.,
 
 No. C-93-20349, 1994 WL 618970, at *3 (N.D.Cal. Oct.31, 1994) (finding that “[a] company may be liable for analyst reports which it fostered and reviewed but failed to correct if it expressly or impliedly represented that the information was accurate or reflected the view of the company5’);
 
 Alfus v. Pyramid Technology Corp.,
 
 764 F.Supp. 598, 603 (N.D.Cal.1991) (finding that a company may be liable for not correcting analysts’ forecasts where it undertakes to provide information regarding and pass on the analysts’ forecasts, but finding no liability where a company officer merely examines and comments upon an analyst’s report);
 
 In re Aldus Sec. Litig.,
 
 [1992-1993 Transfer Binder] Fed. Sec. L. Rep. (CCH ¶ 97,376 at 95,984-85) (W.D.Wash.1993) (finding plaintiffs’ claim sufficiently alleged that defendants placed their imprimatur on analysts’ reports, but employing a lower Rule 9(b) pleading requirement than is applied in this circuit);
 
 In re Cypress Semiconductor Sec. Litig.,
 
 [1993 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 97,060 at 94,698 (N.D.Cal. 1992) (holding that plaintiffs need only allege “that defendants provided information to the securities analysts upon which the reports were based”).
 

 Appellants argue that we should adopt the more liberal approach adopted by these courts, rather than the “restrictive approach,” Appellant’s Brief at 35, employed by the court below. Appellant’s arguments are unpersuasive. Our review of the cases appellant cites indicates that the law applied by those courts is similar to, if not the same as, that applied by the court below. Where the cases may differ is in the pleadings each court requires in order to sufficiently allege that the analysts’ reports are attributable to the defendant. We have repeatedly emphasized Rule 9(b)’s heightened pleading requirements because of our concern that plaintiffs will bring baseless strike suits against securities defendants in order to increase settlement amounts or to engage in a fishing expedition for evidence on which to base its claim.
 
 See Lucia,
 
 36 F.3d at 174 (noting that we have been especially rigorous in applying Rule 9(b) to securities claims because of these concerns);
 
 Romani,
 
 929 F.2d at 878 (same). We find, however, that the eases cited by appellants do not differ substantially from the law applied by the court below.
 

 This circuit has not yet decided whether statements in an analyst’s report may be attributable to a defendant company. As appellants claim-that Bailey fraudulently misled the analysts who prepared these reports, Rule 9(b)’s heightened pleading requirements apply. Assuming
 
 arguendo
 
 that a company may be held liable for false or misleading statements in an analysts’ report where that company has adopted, endorsed, or sufficiently entangled itself with the analysts’ reports,
 
 see Elkind,
 
 635 F.2d at 163, we find that appellants have failed to meet Rule 9(b)’s pleading requirements and their claim must fail. As we noted above, Rule 9(b) requires that plaintiffs “ ‘(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.’”
 
 Shields,
 
 25 F.3d at 1127-28. The district court pointed out to appellants that their earlier complaints failed to meet Rule 9(b)’s requirements. Order of July 31, 1995 at 2; Order of Nov. 10, 1994 at 13. In an apparent attempt to cure these defects, in their Second Amended Complaint, appellants alleged the following:
 

 [I]t was the Company’s practice to have top managers, namely, Chief Financial Officer Heilman, communicate regularly with securities analysts ... to discuss, among other things, the Company’s earnings prospects, its products, the efficiency of the Company’s manufacturing plants, anticipated financial performance, and to provide detailed ‘guidance’ to these analysts with respect to the Company’s business, including projected revenues, earnings, and of particular importance to analysts, earnings per share.
 

 In its order dismissing the Second Amended Complaint, the district court found that appellants’ attempts to satisfy the requirements of Rule 9(b) were insufficient because appellants failed to identify the statements made by Heilman or describe how those statements were false or misleading. Order of
 
 *-1502
 
 Dec. 29, 1995. We agree with the district court that appellants have failed to allege with particularity the false or misleading statements made by Heilman, or any other defendant, that would have induced analysts’ to publicly disseminate misleading forecasts.
 

 We also find that appellants have failed to direct us to any facts to support their conclu-sory allegation that Bailey “endorsed the contents of those reports, adopted them as its own, and placed its imprimatur on them.” Second Amended Complaint, ¶ 36. As presented by the appellants, the reports do not appear to quote any Bailey officer or employee, nor do they imply that the forecasts were supplied or confirmed by any Bailey officer or employee. Appellants’ allegations regarding analysts’ reports fail to meet the pleading requirements of Rule 9(b) and the district court properly dismissed this count of the complaint.
 

 CONCLUSION
 

 For the foregoing reasons, the decision below is
 
 affirmed.
 

 [1]
 

 . The officers included William A. Taylor, who served as a consultant and as a Bailey director at all relevant times; Roger R. Phillips, who served as Chairman of the Board, President, Chief Executive Officer and Secretary of Bailey during the class period; Leonard Heilman, who served as Senior Vice President — Finance and Administration, Chief Financial Officer, Treasurer, and Assistant Secretary of Bailey during the class period; E. Gordon Young, who served as a director of Bailey and as Executive Vice President at all relevant times; and John G. Owens, who served in various management capacities and as a director of Bailey during the class period.
 

 [2]
 

 . Any person who—
 

 (1) offers or sells a security ... by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading ..., and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission,
 

 shall be liable to the person purchasing such security from him....
 

 15 U.S.C. §
 
 111
 
 (1976).
 

 [3]
 

 . Section 10(b) provides:
 

 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
 

 ******
 

 (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
 

 15 U.S.C. § 78j(b) (1981).
 

 [4]
 

 . Section 20(a) provides, in part:
 

 Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable....
 

 15 U.S.C. § 78t (1981).
 

 [5]
 

 . Rule 10b-5 provides:
 

 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
 

 (a) To employ any device, scheme, or artifice to defraud,
 

 (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
 

 (c) To engage in any act, practice, or court of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.
 

 17 C.F.R. § 240.10b-5 (1996).