Lamers v. Kettle Cuisine                  CV-98-039-JD   02/18/00
                   UNITED STATES DISTRICT COURT FOR THE
                          DISTRICT OF NEW HAMPSHIRE


Andrew J. Lamers

      v.                                  Civil No. 98-039-JD
                                          Opinion No. 2000 DNH 043
Kettle Cuisine, Inc.
and Jeremiah A. Shafir


                              O R D E R


                             Background

     Andrew Lamers is a former employee of Kettle Cuisine, Inc.

Jeremiah Shafir is the President and Chief Executive Officer of

Kettle Cuisine.  Lamers brought suit against Kettle Cuisine and

Shafir alleging that they reneged on a promise to give him a 3%

ownership of Kettle Cuisine after he worked there for three

years.  Among other causes of action, Lamers brought claims

against Kettle Cuisine and Shafir for federal securities fraud.

The defendants move for judgment on the pleadings on the federal

securities claims (document no. 40), and Lamers objects.


                         Standard of Review

     The defendants move for judgment pursuant to Federal Rule of

Civil Procedure 12(c) which "allows a party, '[a]fter the

pleadings are closed but within such time as not to delay the

trial, [to] move for judgment on the pleadings.'"  Feliciano v.

State of R.I., 160 F.3d 780, 788 (1st Cir. 1998). "[T]he district court must accept all of the nonmoving party's well-pleaded factual averments as true and draw all reasonable inferences in her favor." Id. "[T]he court may not enter judgment on the pleadings unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his or her claim which would entitle him or her to relief.'" Preyer v. Dartmouth College, 968 F. Supp. 20, 23 (D.N.H. 1997) (quoting Santiago de Castro v. Morales Medina, 943 F.2d 129, 130 (1st Cir. 1991)).

## Facts[1]

Shafir began discussing possible employment at Kettle Cuisine with Lamers in June of 1994 and he told Lamers that he could expect to share financially in Kettle Cuisine's growth. Shafir indicated that plans were to sell the company when its sales reached $10 million per year. He wrote Lamers a letter promising that he would receive a 3% ownership in Kettle Cuisine after working there for three years, earning 1% ownership interest each year. Relying on Shafir's promises, Lamers left another job to work for Kettle Cuisine. Lamers began working for

---

[1]The court takes the following facts as alleged in the plaintiff's complaint for the purpose of deciding this motion only.

2

Kettle Cuisine on August 1, 1994, and proceeded to work 65-hour weeks and commute to work two hours each day.

Lamers was not given any documentation concerning his promised ownership interest while he worked for Kettle Cuisine, despite his repeated requests for such documentation. At some point during Lamers's employment, Shafir told Lamers that he would not be given any ownership interest until he had worked for Kettle Cuisine for three full years. At no time during the period that Lamers worked for Kettle Cuisine did anyone tell him he would have to pay money to receive his 3% interest.

Upon his discharge from Kettle Cuisine on December 1, 1997, Lamers was given a proposed separation agreement that said he would receive his 3% ownership interest only if he paid Kettle Cuisine $18,000 within thirty days. On December 19, 1997, Lamers received papers from Kettle Cuisine's counsel demanding over $24,000, due by December 31, 1997, or else he would forfeit his right to any ownership interest. The defendants also demanded that Lamers sign a non-competition agreement as a condition of ownership. Prior to December 1, 1997, Lamers was unaware that the transfer to him of a 3% ownership interest was conditioned on anything other than a period of employment of at least three years' duration.

3

The defendants contend that they are entitled to judgment on Lamers's claims under federal securities law because the alleged misrepresentations or omissions, if made, were not made in connection with the purchase or sale of a security. Alternatively, the defendants assert that Lamers has not pled his claims of fraud with sufficient particularity as required by Federal Rule of Civil Procedure 9(b).

I.    <u>Connection with the Purchase or Sale of a Security</u>

Counts I, II, and III of Lamers's complaint arise under section 10(b) of the Securities Exchange Act of 1934, which prohibits the use of manipulative or deceptive devices "in connection with the purchase or sale" of a security. 15 U.S.C.A. § 78j(b) (1997). The Securities and Exchange Commission has promulgated Rule 10b-5 that makes it

> unlawful for any person, directly or indirectly, . . .
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or

deceit upon any person,

in connection with the purchase or sale of any
security.

17 C.F.R. § 240.10b-5 (1999). To prove a violation under section 10(b) and Rule 10b-5, a plaintiff must show that the defendant, in connection with the purchase or sale of a security and with scienter, falsely represented or omitted to disclose material information upon which the plaintiff justifiably relied. See Bacon v. Smith Barney Shearson, Inc., 938 F. Supp. 98, 101 (D.N.H. 1996) (citing Estate of Soler v. Rodriguez, 63 F.3d 45, 53 (1st Cir. 1995)).

Anyone who purchases or sells a security has standing to bring a private action for damages under federal securities laws. See Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 749 (1975). Similarly, anyone who has a contractual right to purchase a security, including the holder of an option, is a purchaser for purposes of Rule 10b-5. See id. at 751; see also 15 U.S.C.A. § 78c(10), (13). In this case, it is immaterial whether the court considers the alleged promise to transfer stock to Lamers as an outright sale of stock or a contract for stock options. See Yoder v. Orthomolecular Nutrition Inst., 751 F.2d 555, 560 (2d Cir. 1985). Either type of agreement triggers the protection of Rule 10b-5. The question here is whether the

5

alleged fraud is of the kind Rule 10b-5 was intended to remedy.

Lamers contends that he purchased a 3% ownership interest in Kettle Cuisine by working for the company for over three years. After he gave this consideration for the ownership interest in reliance on Shafir's promises, Kettle Cuisine revealed that the purchase price was not three years' employment, but rather three years' employment, plus $24,000, plus signing a non-competition contract.[2] Therefore, Lamers argues, Shafir and Kettle Cuisine misrepresented and omitted information about the purchase price of the 3% ownership interest, and this fraudulent behavior was directly connected to the price and value of the ownership interest. Kettle Cuisine argues that this is merely a breach of contract claim, any alleged fraud lies in the refusal to tender the ownership interest, and no causal connection exists between the alleged fraud and the purchase or sale of a security.

The allegations made in the complaint do not indicate that any misrepresentations or omissions were made concerning the value of the 3% ownership interest. Shafir made general

_____

[2]The fact that Lamers gave consideration in the form of services as opposed to a monetary amount does not preclude the application of Rule 10b-5. See Yoder, 751 F.2d at 560; Rudinger v. Insurance Data Processing, Inc., 778 F. Supp. 1334, 1338-39 (E.D. Pa. 1991) (citing Collins v. Rukin, 342 F. Supp. 1282, 1288 (D. Mass. 1972)).

predictions that Kettle Cuisine's sales would grow and the company would be profitable, and Lamers has not alleged that these predictions were false. The alleged fraud pertains to the purchase price of the ownership interest, or the value of the consideration provided by Lamers, not the value of the ownership interest itself.

However, in order to violate Rule 10b-5, the misrepresentation does not have to concern the value of the security directly, as the defendants argue. See, e.g., Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 942 (3d Cir. 1985) ("Rule 10b-5 also encompasses misrepresentations beyond those implicating the investment value of a particular security."). For example, a material misrepresentation about vesting rights or preconditions affecting the transferability of stock can constitute fraud in connection with the sale of a security. See Dubin v. E.F. Hutton Group Inc., 695 F. Supp. 138, 147 (S.D.N.Y. 1988). Misrepresentation of the value of consideration offered to a seller in exchange for a security can also constitute fraud in connection with the sale of a security. See Gurwara v. LyphoMed, Inc., 937 F.2d 380, 382 (7th Cir. 1991). Here, the alleged misrepresentation concerns the purchase price of the security, and the value of Lamers's employment as consideration for the security. This kind of misrepresentation

7

is sufficiently related to the sale of the specific security in question to satisfy the connection requirement of section 10(b) and Rule 10b-5.

Of particular concern is whether the alleged fraud induced Lamers to purchase a security. See Collins, 342 F. Supp. at 1290. Lamers claims that Shafir made misrepresentations or omissions concerning the purchase price of the stock and Lamers relied on this misinformation, causing him to purchase a security by accepting employment with Kettle Cuisine. The complaint states facts sufficient to show that Lamers justifiably relied on the representations made by Shafir, and that this reliance caused Lamers to commence and continue his employment with Kettle Cuisine. Under these facts, Lamers could show that the alleged fraud occurred in connection with the purchase or sale of a security. See id. at 1290-91.

The defendants rely on two cases which they claim are similar to the instant case. See Gurwara, 937 F.2d at 381-83; Hunt v. Robinson, 852 F.2d 786, 787 (4th Cir. 1988). Gurwara involved an employee who was told that his decision to go on short-term disability leave would not affect his ability to exercise his stock option, only to find after he took leave that his option was lost. See Gurwara, 937 F.2d at 381. The Fourth Circuit upheld dismissal of the plaintiff's 10(b) claim. See id.

8

at 383. In that case, the misrepresentation involved the plaintiff's opportunity to exercise his stock option based on his employment status, not the option price or the value of the stock. See id. at 382-83. Lamers's allegations differ because he alleges that misrepresentations were made concerning the actual price of the security he purchased. Furthermore, the Seventh Circuit has clarified the Gurwara holding and indicated that it relied primarily on the fact that no purchase or sale occurred and did not reflect a narrow reading of the "in connection with" requirement. See S.E.C. v. Jakubowski, 150 F.3d 675, 679 (7th Cir. 1998).

The Hunt plaintiff signed an employment contract promising him a 22% ownership interest in the company, and sued when the company refused to transfer the stock. See Hunt, 852 F.2d at 786-87. The Seventh Circuit affirmed the dismissal, stating that the alleged fraud was based on the defendants' refusal to tender shares, and finding a lack of causal connection between the fraud and the purchase or sale of stock. See id. at 787. Lamers has alleged more than a simple refusal to transfer stock, however. He alleges that before he was even hired, he was deceived as to the purchase price of the ownership interest, and that this deception caused him to accept employment with Kettle Cuisine. These allegations distinguish the instant case from the bare

refusal to tender shares present in <u>Hunt</u>.  Furthermore, the standard used in <u>Hunt</u> does not appear to comport with the broad, flexible reading of section 10(b) and Rule 10b-5 favored by the United States Supreme Court.  <u>See</u> <u>Superintendent of Ins. of New York v. Bankers Life and Cas. Co.</u>, 404 U.S. 6, 12 (1971) ("Since there was a sale of a security and since fraud was used in connection with it, there is redress under § 10(b), whatever might be available as a remedy under state law."); <u>see also</u> <u>In re Prudential Ins. Co. of Am. Sales Practices Litig.</u>, 975 F. Supp. 584, 607 (D.N.J. 1996) (discussing Third Circuit's disagreement with narrow reading in <u>Hunt</u> and <u>Gurwara</u>); <u>Leisure Founders, Inc. v. CUC Int'l, Inc.</u>, 833 F. Supp. 1562, 1570 (S.D. Fla. 1993) (distinguishing <u>Hunt</u>).

For these reasons, the court finds the defendants' arguments unpersuasive.  The allegations in Lamers's complaint are sufficient to describe fraudulent conduct made in connection with the purchase or sale of a security.

II.  <u>Particularity Requirement</u>

The defendants argue that they are entitled to judgment on the federal securities claims because Lamers has failed to plead his allegations of fraud with the particularity required by Federal Rule of Civil Procedure 9(b).  <u>See</u> Fed. R. Civ. P. 9(b).

10

Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally."  Id. One purpose of the rule is to give the defendant notice of the actions that form the basis of the fraud claim.  See Suna v. Bailey Corp., 107 F.3d 64, 68 (1st Cir. 1997) (citing Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)); Hayduk v. Lanna, 775 F.2d 441, 443 (1st Cir. 1985).  The First Circuit has rigorously applied the requirements of Rule 9(b) to securities fraud cases, noting the need to curtail suits brought for the purpose of conducting discovery.  See Maldonado v. Dominguez, 137 F.3d 1, 9 (1st Cir. 1998) (citing Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1223 (1st Cir. 1996)).  In securities fraud cases, the complaint must specify the time, place and content of the alleged misrepresentations, as well as the speaker.  See Suna, 107 F.3d at 68 (citing Shields, 25 F.3d at 1127-28); Romani v. Shearson Lehman Hutton, 929 F.2d 875, 878 (1st Cir. 1991).  The complaint also must explain why the statements complained of were fraudulent.  See Suna, 107 F.3d at 68 (citing Shields, 25 F.3d at 1127-28).[3]

_____

[3]The complaint also must contain specific factual allegations that give rise to a strong inference of fraudulent

11

The defendants argue that Lamers's complaint does not meet the Rule 9(b) standard because it fails to specifically identify fraudulent statements or explain why the statements were fraudulent. Lamers's complaint states that during the hiring process, Shafir told Lamers he would share the benefit of Kettle Cuisine's growth as an owner.[4] Shafir sent Lamers a letter promising Lamers he would earn his 3% ownership interest after three years' employment, 1% for each year worked. The defendants omitted to inform Lamers that he would have to pay money in addition to working three years to receive an ownership interest. While Lamers was employed at Kettle Cuisine, Shafir told Lamers on more than one occasion that he was working on getting documentation for Lamers about the promised ownership interest. The complaint identifies these statements as untrue statements and omissions of material fact.

The complaint also states that Lamers relied on these representations to leave another job to work at Kettle Cuisine, and to remain working at Kettle Cuisine for over three years.

---

intent. _See_ _Greebel v. FTP Software, Inc._, 194 F.3d 185, 197 (1st Cir. 1999); _Maldonado_, 137 F.3d at 9 (citing _Greenstone v. Cambex Corp._, 975 F.2d 22, 25 (1st Cir. 1992)). The defendants do not argue that the complaint fails on this ground.

[4]The complaint identifies the "hiring process" period as June, July and August of 1994.

12

The complaint explains that the representations were fraudulent because after Lamers had worked for Kettle Cuisine for over three years, he was told that transfer of the 3% ownership interest was conditioned on payment of a specific sum of money and the signing of a non-competition agreement, in addition to the three years' employment Lamers had already contributed. Lamers's complaint both identifies specific statements and omissions that were misleading and explains why these statements were fraudulent. Therefore, the court finds the defendants' argument unpersuasive.

## Conclusion

For the foregoing reasons, the defendants' motion for judgment on the pleadings is denied (document no. 40).

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

February 18, 2000

cc:  M. Elaine Beauchesne, Esquire
     Michael R. Callahan, Esquire

13